BUNCOMBE COUNTY on behalf of YOLANDA Y. BLAIR, Plaintiff v.
WILLIAM E. JACKSON, Defendant

No. COA99-654

(Filed 6 June 2000)

**1. Child Support, Custody, and Visitation— support—guide-lines—multiple children from multiple mothers**

The trial court did not err in concluding that the Child Support Guidelines apply to a situation where one individual might father multiple children from multiple mothers, because the Guidelines specifically provide adjusted gross income is to be computed by deducting from a party's gross income any child support actually made by a party under any pre-existing court order or separation agreement.

**2. Child Support, Custody, and Visitation— support—guide-lines—credit to gross income—pre-existing court order or separation agreement**

Although the Child Support Guidelines provide that a party is entitled to a credit to gross income for any child support paid pursuant to a pre-existing court order or separation agreement, the trial court did not err in adjusting defendant's gross income for the amount of monies he actually paid under the 1996 orders for the benefit of children other than the children subject to the specific claim at issue because at the time of the simultaneous adjudication of multiple child support claims filed by different mothers against defendant father, the 1996 orders of child support were the only pre-existing orders of support.

**3. Child Support, Custody, and Visitation— support—guide-lines—findings**

A child support order for five children amounting to 66% of defendant's gross income is reversed and remanded because the trial court does not reveal any findings as to whether the support set pursuant to the Guidelines would exceed, meet, or fail to meet the reasonable needs of the children, or whether support set pursuant to the Guidelines would be "unjust or inappropriate."

**4. Child Support, Custody, and Visitation— support—health insurance**

The trial court erred in ordering defendant father to carry health insurance for his minor children without first determining its availability at a reasonable cost. N.C.G.S. § 50-13.11(a1).

## 5. Child Support, Custody, and Visitation— support— increase—consent of parties

The trial court erred in a temporary memorandum order by increasing child support to $300 per month because although the order indicates on its face that it was entered on the basis of the consent of both parties, that consent does not appear in this record and there is no other basis to support the order.

Appeal by defendant from order dated 26 February 1999 by Judge Robert L. Harrell in Buncombe County District Court. Heard in the Court of Appeals 28 March 2000.

*Buncombe County Child Support Enforcement Agency, by Susan E. Wilson, for plaintiff-appellee.*

*Ronald C. True for defendant-appellant.*

GREENE, Judge.

William E. Jackson (Jackson) appeals from the trial court's order modifying a previous order of child support and increasing his child support obligation.

The record reveals Jackson is the father of five minor children born of three different mothers. All three mothers, Yolanda Yvette Blair (Blair), Sonya L. Searles (Searles), and Stephanie Renee Williams (Williams), in separate cases, sought child support by and through the IV-D Child Support Enforcement Agency for Buncombe County (Agency). Pursuant to those requests, the trial court, in 1996, ordered child support as follows: (1) for the two children born to Blair, $210.00 per month; (2) for the two children born to Williams, $135.00 per month; and (3) for the one child born to Searles, $90.00 per month.

On 7 December 1998, the Agency moved to modify Jackson's child support obligation in each of the three cases. On 6 January 1999, Jackson moved to deviate from the child support Guidelines,[1] because application of the Guidelines "for one case, will cause alter-

---

1. The applicable child support Guidelines were adopted by the Chief District Court Judges, pursuant to N.C. Gen. Stat. § 50-13.4(c1) (1999), effective 1 October 1998. *See* N.C. Child Support Guidelines, 2000 Special Supp. R-1 to -19 (eff. 1 October 1998) (amending N.C. Child Support Guidelines, 2000 Ann. R. (N.C.) 33-44 (eff. 1 October 1994)) [hereinafter Support Guidelines].

ations in the other cases, and upon altering another case, it will become an endless cycle."[2]

All three cases came on for hearing on 23 February 1999, having been consolidated. The parties stipulated there was a substantial change of circumstances and agreed Jackson had a monthly gross income of $1,678.43. The trial court set the child support in this case by utilizing the Guidelines. It determined Jackson's adjusted gross income ($1,453.43) by deducting his previously determined child support obligations[3] to Searles ($90.00) and Williams ($135.00) from his monthly gross income ($1,678.43-$225.00).[4] The trial court's order contains no findings as to the reasonable needs of the children for support or the relative abilities of each parent to provide child support.

Jackson's child support obligation was modified and increased to the sum of $470.00 per month in this case (Blair), to the sum of $355.00 per month in the Williams case, and to the sum of $262.00 per month in the Searles case. The total support in all three cases amounted to $1,087.00 or approximately 66% of Jackson's gross income.

The trial court's order also provided Jackson "shall[:]

obtain medical insurance within 10 (ten) days of this court order or maintain medical insurance coverage for the child(ren) in this matter. Furnish [Blair] with the policy number for this coverage within 10 (ten) days from the date of this order."

There is no evidence in this record as to the cost of providing medical insurance or whether Jackson had access to group health insurance. After appealing the trial court's order, Jackson moved the trial court

2. In his motion requesting deviation, Jackson asserted child support should be determined by "running the child support guidelines based on one (1) mother with five (5) children, and thereafter dividing the appropriate amount of support for five (5) children, by the five (5) and awarding each mother their pro rata share thereof." This is not an argument asserted on appeal, and, therefore, we do not address it.

3. The Guidelines provide "[t]he amount of child support payments actually made by a party under any pre-existing court order(s) or separation agreement(s) should be deducted from the party's gross income." Support Guidelines, 2000 Special Supp. at R-3.

4. The trial court set support in the Williams and Searles cases in the same manner. For example in the Williams case, the trial court determined Jackson's adjusted gross income ($1,378.43) by deducting his previously determined child support obligations to Searles ($90.00) and Blair ($210.00) from his monthly gross income ($1,678.43-$300.00).

BUNCOMBE COUNTY EX REL. BLAIR v. JACKSON

[138 N.C. App. 284 (2000)]

to stay enforcement of the order pending appeal.[5] The motion was denied by the trial court, and this Court subsequently granted Jackson's writ of supersedeas to stay the orders pending this appeal.[6]

The issues are whether: (I) (A) the Guidelines apply to situations where a person fathers multiple children with multiple mothers; (B) pre-existing child support under the Guidelines has reference to child support orders entered in cases involving one father and multiple mothers with children; (C) the trial court entered findings necessary to reject Jackson's request for a deviation from the Guidelines; and (II) on this record, Jackson can be required to maintain health insurance for his five children.

I

*Child Support*

Child support is to be set in such amount "as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties." N.C.G.S. § 50-13.4(c) (1999). Child support set consistent with the Guidelines is conclusively presumed to be in such amount as to meet the reasonable needs of the child and commensurate with the relative abilities of each parent to pay support. *Browne v. Browne*, 101 N.C. App. 617, 624, 400 S.E.2d 736, 740 (1991). The trial court "upon its own motion" or upon a timely request of a party may deviate from the Guidelines. Support Guidelines, 2000 Special Supp. at R-2; *Browne*, 101 N.C. App. at 624, 400 S.E.2d at 740 (10 days written notice required). If deviation is requested, the trial court is required to follow a four-step process: (1) determine the presumptive child support amount under the Guidelines; (2) take evidence, if offered, as to the reasonable needs of the child and the abilities of the parents to provide support; (3) determine whether the presumptive support would meet or exceed the "reasonable needs of the child considering the relative ability of each parent to provide support or would be otherwise unjust or inappro-

---

5. "[A]n order for the payment of child support which has been appealed to the appellate division is enforceable in the trial court by proceedings for civil contempt during the pendency of the appeal." N.C.G.S. § 50-13.4(f)(9) (1999).

6. "Upon motion of an aggrieved party, the court of the appellate division in which the appeal is pending may stay any order for civil contempt entered for child support until the appeal is decided, if justice requires." N.C.G.S. § 50-13.4(f)(9); N.C.R. App. P. 23 (authorizing appellate court to grant writ of supersedeas staying enforcement of trial court order).

priate"; and (4) following its determination that deviation is either warranted or unwarranted, enter written findings of fact showing the presumptive child support amount under the Guidelines; the reasonable needs of the child; the relative ability of each party to provide support; and that application of the Guidelines would exceed or would (or would not) meet the reasonable needs of the child or would (or would not) be "unjust or inappropriate."[7] N.C.G.S. § 50-13.4(c); *see Sain v. Sain*, 134 N.C. App. 460, 465-66, 517 S.E.2d 921, 926 (1999).

## A

**[1]** Jackson first argues the Guidelines "never contemplated a situation wherein one individual might father multiple children from multiple mothers," and thus, the Guidelines should not apply in this case. We disagree. The Guidelines specifically provide adjusted gross income is to be computed by deducting from a party's gross income any child support "actually made by a party under any pre-existing court order(s) or separation agreement(s)." Support Guidelines, 2000 Special Supp. at R-3. Thus, the Guidelines contemplate a person may father children by several mothers.

## B

**[2]** Jackson argues in the alternative the trial court erred in

> crediting pre-existing child support [for the Williams and Searles] children by using the support amounts from the 1996 Order and not the new amounts [set in 1999], inasmuch as should, for example, an increase be appropriate in the Blair case, then that new amount of support should be utilized in running the Guidelines in the Williams and Searles case[s]. Of course, the Guidelines would then need to be re-run in the Blair case, allowing for the change in numbers on pre-existing support . . . for the other children from the Williams and Searles cases, ad infinitum.

The Guidelines provide a party is entitled to a credit to his gross income for any child support paid pursuant to a "pre-existing" court order or separation agreement. *Id.* Although the Guidelines do not define "pre-existing," its plain meaning in the context of the

---

7. Although section 50-13.4(c) and the Guidelines require findings of fact only when the trial court deviates from the Guidelines, effective appellate review also requires findings to support a denial of a party's request for deviation. *See Patton v. Patton*, 318 N.C. 404, 406, 348 S.E.2d 593, 595 (1986) (findings of fact are required for appellate court to judge whether the order reflects a correct application of the law).

Guidelines allows a credit for any child support paid pursuant to a court order or separation agreement in existence prior to the setting of child support in the case presently before the trial court. *American Heritage College Dictionary* 1078 (3d ed. 1993) ("pre-exist" is defined as "[t]o exist beforehand").

In this case, there were multiple child support claims filed by different mothers against a common father and those claims were consolidated for hearing. Thus, at the time of the simultaneous adjudication of these child support claims, the 1996 orders of child support were the only pre-existing orders of support.[8] Jackson, therefore, was entitled to have his gross income adjusted for the amount of monies he actually paid under the 1996 orders for the benefit of children other than the children subject to the specific claim at issue.

C

[3] Jackson's final alternative argument is the trial court erred in failing to deviate from the Guidelines. Jackson claims a deviation is necessary, because the child support for all five children, set pursuant to the Guidelines, amounted to 66% of his gross income and, therefore, it is not just or appropriate.

The case must be reversed and remanded on this issue, as the order of the trial court does not reveal any findings as to whether the support set pursuant to the Guidelines would exceed, meet, or fail to meet the reasonable needs of the children, or whether support set pursuant to the Guidelines would be "unjust or inappropriate." On remand, the parties will be permitted to offer new evidence and any order entered must ensure that Jackson has "sufficient income to

---

8. Although the issue is not presented in this case, it does not appear a different result would be required even if the modification cases had not been consolidated for hearing but were heard separately at the same session of court. For example, child support is modified in case A, increasing the obligor parent's child support obligation. Sometime later in the same session of court, case B is called for trial and the father contends he should be given credit for the child support he is most recently obligated to pay in case A. A parent is, however, entitled to credit only for "payments actually made" pursuant to a previous child support order, Support Guidelines, 2000 Special Supp. at R-3, and as the most recent previous order had just been entered, it is unlikely the obligor parent would have yet made a payment.

If, however, case B was called for trial some months after child support was increased in case A and payments were being made pursuant to this modification order, the obligor parent, it appears, would be entitled to a credit for payments under the most recent order. Under this scenario, the child in case B could likely receive less support, under the Guidelines, than the child in case A because of the larger credit. Thus, under this scenario, application of the Guidelines would appear to be "unjust" and "inappropriate."

maintain a minimum standard of living based on the 1997 federal poverty level for one person."[9] Support Guidelines, 2000 Special Supp. at R-2.

## II

### *Health Insurance*

**[4]** Jackson argues the trial court committed reversible error in ordering him to carry health insurance for his minor children without first determining its availability at a reasonable cost. We agree.

N.C. Gen. Stat. § 50-13.11 provides, in pertinent part:

> (a) The court may order a parent of a minor child . . . to provide *medical support* for the child . . . . An order . . . for *medical support* for the child may require one or both parties to pay the medical, hospital, dental, or other health care related expenses.

> (a1) The court shall order the parent of a minor child . . . to maintain *health insurance* for the benefit of the child when *health insurance* is available at a reasonable cost. As used in this subsection, *health insurance* is considered reasonable in cost if it is employment related or other group health insurance, regardless of service delivery mechanism.

N.C.G.S. § 50-13.11(a), (a1) (1999) (emphasis added).

Agency argues "medical support," within the meaning of section 50-13.11(a), includes health insurance, and thus, the trial court has the discretion to order a parent to provide health insurance pursuant to this subsection. Jackson argues health insurance can be ordered for a child only pursuant to section 50-13.11(a1), and thus, only upon a showing that "health insurance" is available at a reasonable cost. We agree with Jackson.

"[M]edical support" as referenced in subsection (a) is defined to include "medical, hospital, dental, or other health care related expenses." N.C.G.S. § 50-13.11(a). Although "other health care related expenses" is somewhat ambiguous and could be read to include

---

9. The 1997 federal poverty levels are found in the *Federal Register*. *See* Annual Update of HHS Poverty Guidelines, 62 Fed. Reg. 10,856-59 (1997). For example, the annual poverty level of a family unit of one person is $7,890.00 in the 48 contiguous states. *Id.* at 10,857.

health insurance, such a construction would be contrary to the clear intent of the legislature. By including a separate and specific provision on "health insurance," the legislature reveals its intent that "health insurance" be ordered only pursuant to subsection (a1). *See Merritt v. Edwards Ridge*, 323 N.C. 330, 337, 372 S.E.2d 559, 563 (1988) (where a statute deals with a particular situation in detail, while another deals with it in general and comprehensive terms, the particular statute will be construed as controlling). "[M]edical support," by definition, thus, does not include health insurance.

In this case, there is no evidence health insurance was available to Jackson at a "reasonable cost," was available to Jackson at his place of employment, or was otherwise available through some group insurance plan. N.C.G.S. § 50-13.11(a1) (health insurance is available at a reasonable cost if "employment related or other group health insurance"). Accordingly, the trial court had no authority to order Jackson to provide health insurance for the children. On remand, Agency should be given the opportunity to present evidence that health insurance is available to Jackson at a reasonable cost or otherwise request an order directing Jackson to provide "medical support" within the purview of subsection (a).

[5] Jackson finally contends a Temporary Memorandum Order entered on 15 January 1999, increasing child support to $300.00 per month, must be reversed. We agree. The Order indicates on its face it was entered on the basis of the consent of both parties, but that consent does not appear in this record and there is no other basis to support the Order. The 15 January 1999 Order is, thus, vacated.

Reversed in part, vacated in part, and remanded.

Judges McGEE and EDMUNDS concur.