PATRICIA R. HODGES, Plaintiff v. ARMSTEAD HODGES, Defendant

No. COA00-1293

(Filed 4 December 2001)

**1. Child Support, Custody, and Visitation— support—payment to mother during pregnancy**

The trial court did not err in a child support action by finding that a $5,000 payment was to provide compensation to plaintiff during a difficult pregnancy rather than defendant's half of medical expenses incurred in the birth of the child and child support.

**2. Child Support, Custody, and Visitation— support—calculation of father's income—prior year's part-time earnings**

The trial court erred in a 2000 child support action by including defendant's part-time earnings in 1999 where defendant was not earning any part-time income at the time of the hearing. Child support obligations should be determined by a party's actual income at the time the order is made; a party's earning capacity may be used to calculate the award only if defendant deliberately depressed his income or deliberately acted in disregard of his obligation to provide support.

**3. Child Support, Custody, and Visitation— support—insurance for father's other children**

The trial court erred in a child support action by failing to include defendant's payments for insurance for his other children when determining his monthly adjusted gross income. Any payments for medical insurance premiums made pursuant to either an order or a private agreement constitute child support within the Child Support Guidelines and should be deducted from the party's gross income to determine his monthly adjusted gross income.

**4. Child Support, Custody, and Visitation— support—father's standard of living—no request for deviation from Guidelines**

The trial court was not required to deviate from the Child Support Guidelines to ensure that defendant was able to maintain a minimum standard of living where defendant did not request a deviation from the Guidelines.

Appeal by defendant from order filed 2 June 2000 by Judge Pattie S. Harrison in Person County District Court. Heard in the Court of Appeals 6 November 2001.

*Ramsey, Ramsey & Long, by Julie A. Ramsey, for plaintiff-appellee.*

*George B. Daniel, P.A., by George B. Daniel and John M. Thomas, for defendant-appellant.*

GREENE, Judge.

Armstead Hodges (Defendant) appeals an order filed 2 June 2000 (the order) ordering Defendant pay $434.00 per month to Patricia R. Hodges (Plaintiff) for support of Plaintiff and Defendant's minor child, Casey Alexis Hodges (Casey). The order also ordered Defendant pay arrears in the amount of $1,379.00 and pay one-half of Plaintiff's uncovered medical expenses incurred during Plaintiff's pregnancy and Casey's birth.

Plaintiff and Defendant were married on 19 July 1995, and Casey was born on 8 October 1999. On 6 December 1999, Plaintiff filed a complaint against Defendant requesting: sole custody and control of Casey; Defendant be ordered to pay child support to Plaintiff in accordance with the North Carolina Child Support Guidelines (the

Guidelines); and Defendant be ordered to reimburse Plaintiff for "his proportionate share of her expenses for prenatal care, the birth of [Casey], and the care of [Casey] between [8 October 1999] and the filing of [Plaintiff's] complaint." On 5 May 2000, Plaintiff was granted custody of Casey through a consent order entered into by the parties, and a trial proceeded on the remaining issues.

At trial, Defendant testified he had been employed with the North Carolina Department of Corrections (the DOC) for eleven years. Because Defendant was working first shift, he did not have the potential for overtime. In 1999, Defendant had also worked part-time for Danville Distributing Company and earned approximately $367.00 (an average of $30.58 monthly); however, because Defendant was working first shift at the DOC, he would be unable to work for Danville Distributing Company in 2000. Defendant did not expect to earn income in 2000 from his former part-time employment as a "wrecker driver."

On cross-examination, Defendant testified he did not provide either daycare or insurance for Casey. Defendant also is the father of two other children from previous relationships (the other children), and he pays child support in the amount of $307.50 for one child and $325.00 for the other child pursuant to voluntary support agreements. In addition, Defendant was paying a total of $175.00 monthly in health insurance premiums for the other children pursuant to voluntary support agreements. Defendant testified his monthly gross income from the DOC was $2,277.33. In addition to Defendant's employment with the DOC, Defendant was the fire chief for the Providence Fire and Rescue Department. Defendant earned no income from his position as fire chief, which required him to "put in about four to five hours a day at the fire department."

Plaintiff testified she was employed with the DOC and earned approximately $2,195.75 in monthly gross income. From September 1999 through the end of December 1999, Plaintiff earned no income as she was out of work due to Casey's premature birth and other health complications. During the period Plaintiff was out of work, she received $5,000.00 from Defendant shortly after Casey's birth. The $5,000.00 was pursuant to an agreement the parties had made prior to Casey's birth whereby Defendant would give Plaintiff the money to "keep [her] afloat." Plaintiff testified Defendant gave her the money because "he felt a little guilty [and] he was trying to help [her]" as Defendant had engaged in a relationship with another woman during

the course of the marriage of Plaintiff and Defendant and had conceived a child with the other woman.

Prior to and shortly after Casey's birth, Plaintiff had a lapse in insurance. Consequently, Plaintiff's "out-of-pocket medical expenses" total $3,300.00. Plaintiff pays approximately $75.00 per week in daycare expenses for Casey, and she provides health insurance for Casey totaling $117.16 a month. Plaintiff, however, received information from the DOC that as of 1 July 2000, the insurance would cost $149.00. On cross-examination, Plaintiff denied Defendant paid her $300.00 in February 2000 for support of Casey.

During the course of the trial, Defendant testified again and stated his "take-home pay" would be approximately $600.00 per month after deducting the child support payments and a monthly automobile payment of $225.00. Defendant testified Plaintiff started asking him about the $5,000.00 after Casey was born; and his purpose in giving Plaintiff the $5,000.00 was because "[s]he needed the money for expenses when [Casey] was born, and [Plaintiff] had expenses that had to be paid. [Plaintiff] owed the hospital bill and doctor's bill and her other bills." Defendant testified he gave Plaintiff, in support of Casey: $350.00 in December 1999; $250.00 in January 2000; $300.00 in February 2000; $325.00-$350.00 in March 2000; and $350.00 in April 2000. Plaintiff, when recalled to testify, stated the $5,000.00 was to assist her in keeping her job and paying her bills, and she believed the $5,000.00 was for her living expenses.

The trial court filed its order on 2 June 2000 and found as fact, in pertinent part, that: Defendant "has monthly gross income from his employment with the [DOC] and from secondary income in a monthly amount of $2,308.00"; Plaintiff has monthly gross income in the amount of $2,196.00; Plaintiff provides health insurance for Casey in the amount of $150.00 and "child care for [Casey] at an actual cost of $325.00 per month, 75% of which is $244.00 per month"; "Defendant has two additional children with two different mothers for whom he is paying child support in a total amount of $633.00 per month"; Defendant's $5,000.00 payment to Plaintiff "compensated her for the period of time that she was out of work due to her pregnancy"; "the $5,000.00 payment constituted support for . . . Plaintiff during a difficult pregnancy" and did not constitute payment for support of Casey; under the Guidelines, Defendant should pay $434.00 monthly in support of Casey; "[s]ince the filing of the complaint in this matter on December 6, 1999, . . . Defendant had paid . . . $1,225.00 [in support of

Casey]. The total amount owed would have been $2,604.00 as of May 6, 2000[]"; considering the total amount of child support owed for Casey, Defendant is in arrears in the amount of $1,379.00; and each party should be responsible for one-half of the $3,300.00 in medical expenses not covered by insurance and incurred by Plaintiff and Casey.

The trial court then concluded the matter was properly before it "for a determination of child support and payment of medical expenses" and Defendant was required to pay Plaintiff the sum of $434.00 per month in child support. Consistent with its findings of fact and conclusions of law, the trial court ordered: Defendant pay to Plaintiff $434.00 per month as child support on or before the first day of each month; Defendant pay his total arrears to Plaintiff before 1 June 2000; Defendant and Plaintiff "shall be responsible for one[-]half of all reasonable and necessary medical, dental, orthodontic, optometric, and other health care expenses incurred on behalf of [Casey] and not covered by insurance"; and Defendant should pay one-half of the approximately $3,300.00 in uncovered medical expenses incurred during the pregnancy and birth of Casey.

---

The issues are whether: (I) there is competent evidence to support the trial court's finding of fact that the $5,000.00 payment constituted support for Plaintiff and not support for the child or reimbursement for medical expenses; and (II) the trial court properly computed Defendant's child support obligation for Casey, taking into account Defendant's child support payments, including payments for medical insurance, for the other children.

"Child support set consistent with the Guidelines is conclusively presumed to be in such amount as to meet the reasonable needs of the child and commensurate with the relative abilities of each parent to pay support." *Buncombe County ex rel. Blair v. Jackson*, 138 N.C. App. 284, 287, 531 S.E.2d 240, 243 (2000); *see* N.C.G.S. § 50-13.4(c1) (1999). Thus, absent a timely and proper request by the parties, the trial court is not required to either deviate from the Guidelines or "take any evidence, make any findings of fact, or enter any conclusions of law 'relating to the reasonable needs of the child for support and the relative ability of each parent to [pay or] provide support' " in setting the amount of support. *Browne v. Browne*, 101 N.C. App. 617, 624, 400 S.E.2d 736, 740 (1991) (citation omitted). This Court's review of a trial court's child support order is limited to whether there is competent evidence to support the findings of fact, despite the fact

**HODGES v. HODGES**

[147 N.C. App. 478 (2001)]

that different inferences may be drawn from the evidence. *Cauble v. Cauble*, 133 N.C. App. 390, 395-96, 515 S.E.2d 708, 712 (1999).

## I

**[1]** Defendant first argues that because there were no allegations in Plaintiff's complaint she was either seeking or entitled to postsepara- tion support or alimony, the trial court erred in finding the $5,000.00 payment "was for spousal support and not for [support of Casey] or for payment toward medical expenses incurred by . . . Plaintiff for the birth of [Casey]." We disagree.

In this case, Plaintiff was neither seeking nor did the trial court award either postseparation support, within the meaning of N.C. Gen. Stat. § 50-16.2A, or alimony, within the meaning of N.C. Gen. Stat. § 50-16.3A. Although there was conflicting evidence surrounding the circumstances of the $5,000.00 payment, there was evidence the parties contemplated the payment prior to Casey's birth and, thus, prior to Plaintiff incurring medical bills due to Casey's birth. Plaintiff testified Defendant gave her the $5,000.00 to "keep [her] afloat" and to provide her with money for living expenses. Accordingly, the trial court did not err in failing to find the $5,000.00 was payment for Defendant's one-half share of the medical expenses and/or support for Casey, as there was competent evidence to support the trial court's finding the $5,000.00 payment was to provide compensation to "Plaintiff during a difficult pregnancy." *See id.*

## II

Defendant next argues the trial court erred in finding and con- cluding Defendant's amount of monthly child support for Casey to be $434.00.

## A

**[2]** Defendant specifically contends the trial court erroneously included in his gross income,[1] his 1999 earnings from Danville Distributing Company ($30.58 monthly). We agree.

Child support obligations should be "determined by a party's actual income *at the time the order is made*" and a "party's earning

---

1. We note the record to this Court fails to include the Guidelines worksheet used by the trial court in determining the child support. Thus, we are unable to determine with certainty the amount placed in the Defendant's gross income column. The better practice is for an appellant to include the Guidelines worksheet in the record on appeal.

capacity may be used to calculate the award [only] if he deliberately depressed his income or deliberately acted in disregard of his obligation to provide support." *Sharpe v. Nobles*, 127 N.C. App. 705, 708, 493 S.E.2d 288, 290 (1997) (emphasis added). In this case, the only income Defendant had at the time the order was entered was from the DOC, as he was not earning any income from Danville Distributing Company. To the extent the trial court believed Defendant had the capacity to earn an additional $30.58 in June 2000 (the date the order was entered), this earning capacity could be considered only upon a finding Defendant was deliberately depressing his income and there is no such finding in this record. Accordingly, the trial court erred in including this additional income in Defendant's gross income.

B

**[3]** Defendant next argues the trial court erred in failing to consider his payment of premiums to maintain medical insurance on the other children when determining his monthly adjusted gross income. We agree.

Child support payments made pursuant to "any pre-existing court order(s) or separation agreement(s) should be deducted from the party's gross income." N.C. Child Support Guidelines, 2001 Ann. R. (N.C.) 33, 35 [hereinafter Support Guidelines]. Thus, any payments for medical insurance premiums made pursuant to either an order or a private agreement constitute child support within the meaning of the Guidelines and should be deducted from the party's gross income to determine his monthly adjusted gross income. *See id.*

In this case, the findings entered by the trial court do not reveal it considered payments for medical insurance premiums for the other children. Accordingly, the trial court erred in failing to include these payments when determining Defendant's monthly adjusted gross income.

C

**[4]** Defendant finally contends the trial court erred in failing to ensure any order entered for child support left him with "sufficient income to maintain a minimum standard of living." We disagree.

Proper application of the Guidelines presumptively "ensures that obligors [are left with] sufficient income to maintain a minimum standard of living based on the 1997 federal poverty level for one person." *Id.* at 34. If an obligor contends an order entered consistent with the Guidelines does not leave him with "sufficient income to maintain

a minimum standard of living," he is obligated to timely request a deviation from the Guidelines. *See Buncombe*, 138 N.C. App. at 289-90, 531 S.E.2d at 244 (obligor had requested a deviation); *see also Browne*, 101 N.C. App. at 624, 400 S.E.2d at 740. The trial court then is required to follow the four-step procedure outlined in *Buncombe*. Whether the presumptive child support amount (as determined pursuant to the Guidelines) places the obligor below the federal poverty level is a matter properly considered in the context of his "abilit[y] . . . to provide support." *See Buncombe*, 138 N.C. App. at 287, 531 S.E.2d at 243 (step 2).

In this case, Defendant did not request a deviation from the Guidelines and thus cannot now be heard to complain he is left without sufficient income to maintain a standard of living at or above the poverty level. Accordingly, the trial court is not required to deviate from the Guidelines to ensure Defendant was able to maintain a minimum standard of living.

On remand in this case, the trial court is to re-compute Defendant's monthly gross income consistent with section II(A) of this opinion and re-compute Defendant's monthly adjusted gross income consistent with section II(B) of this opinion to redetermine Defendant's child support obligation for Casey.

Affirmed in part, reversed in part, and remanded.

Judges McCULLOUGH and CAMPBELL concur.