DIETZ, Judge.
 

 *501
 
 Defendant Jill Ann Gerber Kaiser appeals from a child support order. She contends that the order lacks sufficient findings to support various determinations concerning the parties' gross income and applicable credits.
 

 As explained below, we hold that the court's determination of Ms. Gerber's regular
 
 *226
 
 capital gains income, her dividend income, maintenance from Ms. Gerber's fiancé, and several other aspects of the order are unsupported by sufficient factual findings. We therefore vacate the order. On remand, the trial court, in its discretion, may enter a new child support order based on the existing record or may conduct any further proceedings that it deems necessary.
 

 Facts and Procedural History
 

 Defendant Jill Ann Gerber Kaiser and Plaintiff Robert David Kaiser are the parents of three minor children. Ms. Gerber and Mr. Kaiser married in June 2000, separated in June 2014, and divorced on 4 December 2015. Following the parties' separation, Ms. Gerber took custody of the three children, moved to Illinois, and later was awarded primary custody by consent order.
 

 On 30 June 2014, Mr. Kaiser filed this action seeking a judicial determination of his child support obligation. While this action was pending, Mr. Kaiser paid $1,565 per month to Ms. Gerber, which he believed to be his child support obligation. These payments were a combination of cash payments and a $565 per month payment on Ms. Gerber's car debt. On 2 April 2015, Ms. Gerber filed a counterclaim for child support.
 

 *502
 
 On 19 July 2016, Mr. Kaiser moved for an order to show cause for contempt and to modify child custody, alleging that Ms. Gerber was engaging in a "concerted effort to alienate the minor children" from him. Mr. Kaiser requested primary custody of the children. The trial court later entered an order transferring jurisdiction of any further child custody matters, including Mr. Kaiser's motion to modify, to Illinois where Ms. Gerber resides with the children.
 

 At the hearing on the issue of child support, Ms. Gerber's testimony and the exhibits presented showed that she had significant capital gains each year from 2013 through 2015. In 2014 and 2015, Ms. Gerber sold mutual fund shares in a Wells Fargo account, realizing capital gains of $67,386 in 2014 and $73,143 in 2015. Ms. Gerber then sold the remaining assets in that account in early 2016, realizing $10,345 in capital gains from this final sale.
 

 Ms. Gerber and her accountant both testified that Ms. Gerber received dividend income in 2014 and 2015 from three sources: $580 from the Wells Fargo account, $6,100 from a Vanguard account, and $1,541 from a Charles Schwab account. Ms. Gerber testified that, although the Charles Schwab account was in her name and she included the dividends on her tax returns, the account actually belonged to her father and she did not use the income generated from the account. The parties' post-nuptial agreement designated the account as "Wife's Father's Separate Property."
 

 Ms. Gerber also testified that she and the children currently reside in a rental house that costs $3,500 per month. She testified that the lease is solely in her name, but that her fiancé lives with her and pays her $1,750 per month to cover his share of the rent and household expenses. Ms. Gerber explained the she and her fiancé "function financially like roommates."
 

 Ms. Gerber also testified that, between the date of separation and trial, she incurred $15,048.88 in expenses for therapy for the children. The children were treated for PTSD and anxiety issues as "a result of the relationship with their father." Ms. Gerber testified that the intent of the therapy was "to try to repair the damage to the relationship between Mr. Kaiser and the children" because the children were afraid of their father, their fear got worse after they moved to Illinois, and the therapists were "trying to help them ... be less afraid of him and-and relate to him better."
 

 Mr. Kaiser testified that Ms. Gerber caused these issues for their children because she "creates this horrible situation for the girls where they feel like they've been abused and abandoned and then, uh, selects
 
 *503
 
 these counselors and tells them all these lies about things that have happened and tells the kids and creates all these issues."
 

 Mr. Kaiser testified regarding the income he receives from his 50% interest in a business called SAJ Media. He provided documentation of the business's revenues from the first eight months of 2016 but did not provide a projection for likely profits for the
 
 *227
 
 remainder of the year. Ms. Gerber asserted that the business typically earned its largest profit in the final three months of the year. Mr. Kaiser testified that the net profit for the year "depends on what happens the rest of the year" and there is no way "with certainty to know what's going to happen in the next three months." He testified that "there's so much uncertainty you really don't know" because "our year is made or broken in the fourth quarter."
 

 Mr. Kaiser also testified that, in addition to his income from SAJ, he had received a total of $50,000 in financial support from his parents after he separated from Ms. Gerber. Mr. Kaiser testified that the $50,000 he received was a loan rather than a gift. He explained that there is a written promissory note for repayment of $30,000 and an informal verbal agreement to repay the remaining $20,000.
 

 On 14 November 2016, the trial court entered its child support order. The trial court found that it was necessary "to deviate from the presumptive child support guidelines" due to the length of time that the matter had been pending and the significant changes in income for both parties. The trial court stated that its determination of the parties' incomes was based on "the parties['] 2014-2015 Tax Returns, their current paystubs, 2015 and 2016 YTD Profit and Loss Statements of SAJ Media, and the testimony of [Ms. Gerber's] CPA." The trial court found that Ms. Gerber's income is $15,239 per month, including $685 per month in regular dividends, $6,095 per month in regular capital gains, and $1,750 per month from her fiancé for maintenance. The court found that Mr. Kaiser's income is $9,615 per month, including his salary of $5,833 per month from SAJ Media and his profits of $3,620 per month from his 50% ownership share of SAJ Media. The trial court relied on the 2016 year-to-date profits from SAJ Media to determine Mr. Kaiser's expected yearly income from the company, without assuming an increase from expected fourth quarter profits. Ultimately, the trial court found that Mr. Kaiser's income represents 38.7% of the parties' combined incomes and Ms. Gerber's income represents 61.3%.
 

 Based on its findings regarding the parties' incomes and expenses, the trial court ordered Mr. Kaiser to pay $1,922 per month in child support to Ms. Gerber. The trial court determined that Mr. Kaiser had paid
 
 *504
 
 a total of $39,043 in child support from the date of separation through October 2016, resulting in a $1,304 overpayment. In making this determination, the court credited Mr. Kaiser for car payments of $565 per month on Ms. Gerber's car. The trial court denied Ms. Gerber's request for payment for the children's past and future therapy expenses, finding that the expenses for therapy were "unreasonable and unnecessary" and Mr. Kaiser was not obligated to pay Ms. Gerber for them because "the primary cause for any therapy was [Ms. Gerber's] active alienation of the minor children against their dad." Ms. Gerber timely appealed.
 

 Analysis
 

 Ms. Gerber challenges virtually every portion of the trial court's child support order in this case, but her arguments largely are tied together by a single thread: the lack of sufficient factual findings to support various legal determinations concerning the parties' respective child support obligations. As explained below, we agree that many of the decisions in the trial court's order lack sufficient factual findings. We therefore vacate the trial court's order and remand for further proceedings.
 

 In North Carolina, the determination of parents' child support obligations is guided by the North Carolina Child Support Guidelines, which are designed to calculate the amount of financial support necessary to meet "the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case."
 
 N.C. Gen. Stat. § 50-13.4
 
 (c) ;
 
 see also
 
 2015 N.C. Child Support Guidelines, AOC-A-162, Rev. 8/15, at 2.
 

 Ordinarily, "[c]hild support orders entered by a trial court are accorded substantial deference by appellate courts and
 
 *228
 
 our review is limited to a determination of whether there was a clear abuse of discretion."
 
 Leary v. Leary
 
 ,
 
 152 N.C. App. 438
 
 , 441,
 
 567 S.E.2d 834
 
 , 837 (2002). "The trial court must, however, make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law."
 
 Spicer v. Spicer
 
 ,
 
 168 N.C. App. 283
 
 , 287,
 
 607 S.E.2d 678
 
 , 682 (2005).
 

 Over time, this Court has decided hundreds of cases involving the calculation of gross income and the deductions and credits applicable to parties' child support obligations under the Guidelines. In many of these cases, this Court has identified specific fact findings that are
 
 *505
 
 necessary for this Court to review the judgment. The unfortunate result of this patchwork of precedent is that trial courts and parties preparing proposed orders must comb through decades of past cases to ensure that their orders contain the specific findings required by this Court. And, as this case demonstrates, despite the volume of past precedent, there are still some issues concerning the Guidelines that have yet to be addressed in an appellate decision.
 

 Thus, we sympathize with the trial court in this case, which entered a detailed and well-reasoned order involving a number of complicated issues. Nevertheless, we hold that some of the court's determinations in the order lack specific findings required by our precedent or established in this opinion. We therefore vacate the order and remand for further proceedings.
 

 I. Trial court's calculation of the parties' current gross income
 

 Ms. Gerber first challenges various aspects of the trial court's calculation of the parties' gross income. We address these challenges in turn below, but begin with the general principles that govern our review on this issue.
 

 "It is well established that child support obligations are ordinarily determined by a party's actual income at the time the order is made or modified."
 
 Ellis v. Ellis
 
 ,
 
 126 N.C. App. 362
 
 , 364,
 
 485 S.E.2d 82
 
 , 83 (1997). Although this means the trial court must focus on the parties' current income, past income often is relevant in determining current income. Indeed, this Court has expressly held that "a trial court may permissibly utilize a parent's income from prior years to calculate the parent's gross monthly income for child support purposes."
 
 Midgett v. Midgett
 
 ,
 
 199 N.C. App. 202
 
 , 208,
 
 680 S.E.2d 876
 
 , 880 (2009).
 

 For example, in professions where income is seasonal or highly variable from month to month, evidence of income in past years can assist the trial court in determining current monthly gross income.
 
 See
 
 ,
 
 e.g
 
 .,
 
 Holland v. Holland
 
 ,
 
 169 N.C. App. 564
 
 , 568,
 
 610 S.E.2d 231
 
 , 235 (2005) (discussing use of prior years' income for a farmer whose "crops would have been harvested and sold in the late summer and fall"). Similarly, where the court finds that a party's most recent pay stubs or most recently filed tax return are unreliable, the court can use past years' income to fill in the gaps.
 
 See
 
 ,
 
 e.g.
 
 ,
 
 Diehl v. Diehl
 
 ,
 
 177 N.C. App. 642
 
 , 650,
 
 630 S.E.2d 25
 
 , 30 (2006) (holding that a trial court may calculate current income by "averaging [the party's] income from his two prior tax returns" where the most recent tax return was unreliable).
 

 *506
 
 What matters in these circumstances is the reason
 
 why
 
 the trial court examines past income; the court's findings must show that the court used this evidence to accurately assess current monthly gross income.
 
 See
 

 Green v. Green
 
 , --- N.C. App. ----, ----,
 
 806 S.E.2d 45
 
 , 55 (2017).
 
 [1]
 
 With this precedent in mind, we turn to the trial court's findings in this case.
 

 A. Regular capital gains income
 

 We begin by addressing the court's calculation of income from regular capital gains. The trial court found that Ms. Gerber
 
 *229
 
 had current, regular monthly income of $6,095 in capital gains at the time of the November 2016 order. The court appears to have calculated this monthly income by taking the total capital gains reported in Ms. Gerber's 2015 tax return and dividing that number by 12. The court also found that "while [Ms. Gerber] urged the Court to treat this income as irregular the Court finds that she regularly received capital gains in 2013, 2014, 2015 and will continue to receive capital gains in 2016." As explained below, we hold that these findings are insufficient and therefore remand for further proceedings.
 

 Realized capital gains are treated as part of "gross income" under the North Carolina Child Support Guidelines. 2015 N.C. Child Support Guidelines, AOC-A-162, Rev. 8/15, at 3. But capital gains differ from more traditional sources of income and these differences mean more fact finding by the trial court often will be required. By their nature, capital gains are a highly variable type of income. To realize a capital gain, one must first own capital-whether stocks, bonds, real property, or any other form of capital-and then sell that capital for a profit. By doing so, one no longer owns that capital, and cannot expect to receive any further gains as that asset appreciates.
 

 Likewise, particularly with respect to corporate stock, asset prices are volatile. Thus, even if one holds substantial assets in stock and regularly sells a fixed portion of those holdings each year, the capital gains could vary year to year (indeed, some years the sale could realize a capital loss). Thus, income from past capital gains generally is a poor predictor of current, regular income from capital gains.
 

 *507
 
 This does not mean courts must ignore all past capital gains. But if the trial court relies on past capital gains to calculate current, regular capital gain income, the court must include sufficient findings to establish (1) that the party still owns additional capital assets of like kind sufficient to continue generating similar gains; and (2) that the party reasonably can be expected to continue realizing similar gains given past behavior and current market conditions.
 

 Here, for example, the record indicates that Ms. Gerber's capital gains in 2014 and 2015-on which the trial court relied to determine Ms. Gerber's regular capital gains income in 2016-resulted from the sale of mutual fund holdings in a Wells Fargo account. In each of those years, Ms. Gerber realized approximately $70,000 in capital gains. But the record also shows that, by early 2016, Ms. Gerber sold the last remaining assets in that Wells Fargo account, realizing only $10,345 in capital gains.
 

 Ms. Gerber also has capital assets in a Charles Schwab and a Vanguard account, but the trial court did not find that those accounts were similar to the Wells Fargo account, could be expected to generate similar capital gains, or were similarly suited for sale and realization of gains in current market conditions. Indeed, the record shows that the Vanguard account generates sizable dividend income, which may indicate that one would not reasonably expect Ms. Gerber to sell those assets but instead continue holding them to generate regular dividend income.
 

 In sum, the trial court's order does not contain sufficient findings to justify the use of Ms. Gerber's past capital gains to calculate current, regular capital gains income. We therefore vacate and remand for further proceedings on this issue.
 
 [2]
 

 B. Dividend income
 

 Ms. Gerber next challenges the trial court's findings concerning her regular dividend income. The trial court, based on evidence of Ms. Gerber's dividend income in 2014 and 2015, found that Ms. Gerber received $685 per month in regular dividend income. The court did not make specific findings about the sources of that dividend income. Mr. Kaiser concedes on appeal that the trial court's dividend calculation included income from three sources: the Wells Fargo account, the
 
 *508
 
 Charles Schwab account, and
 
 *230
 
 the Vanguard account. But, as explained above, Ms. Gerber sold her remaining assets in the Wells Fargo account in early 2016. From the record on appeal, we are unable to determine if the trial court's calculation of regular dividend income as of November 2016 included dividend income from assets Ms. Gerber sold months earlier and thus cannot generate future dividend income. We therefore vacate and remand for further proceedings on this issue.
 

 C. Business income
 

 Ms. Gerber next challenges the trial court's calculation of Mr. Kaiser's profit from his 50% ownership in SAJ Media. She argues that the trial court's findings are insufficient to support its calculation because the court relied on the business's net income during the first eight months of 2016 without making findings concerning the final three months of the year, which Ms. Gerber asserts are SAJ Media's "biggest quarter."
 

 We reject this argument. The trial court heard testimony indicating that any prediction of increased profits for the business during the fourth quarter of 2016 was too speculative to credit. Thus, the trial court's calculation of SAJ Media's income, using only the existing eight months of 2016 income, is supported by competent evidence. To be sure, the trial court made no specific fact finding that rejected Ms. Gerber's evidence concerning the anticipated increase in 2016 profits during the fourth quarter. But our precedent does not require a specific, express fact finding on this issue. Accordingly, we hold that the trial court's general findings are sufficient to support its calculation of this business income.
 

 D. Support from Mr. Kaiser's parents
 

 Ms. Gerber next challenges the trial court's decision not to treat as income approximately $50,000 in payments that Mr. Kaiser received from his parents. She argues that the trial court failed to make a specific, express finding that these payments were something other than ordinary maintenance that qualifies as gross income under the Guidelines.
 

 We reject this argument. Mr. Kaiser testified that these payments were loans he was obligated to repay, not gifts or maintenance. And, as with the business income issue, our precedent does not require the trial court to include a separate, express fact finding concerning this determination. Thus, the court's general findings concerning Mr. Kaiser's income, which did not include these payments and thus impliedly rejected Ms. Gerber's argument, are supported by competent evidence and are sufficient.
 

 *509
 

 E. Support from Ms. Gerber's fiancé
 

 Ms. Gerber next argues that the trial court improperly treated her fiancé's payments to her as income. She contends that her fiancé is a cohabitant and those payments are simply his share of the cost of housing and household expenses. She asserts that roommates' and other cohabitants' payments for their share of household expenses cannot be treated as maintenance under the Guidelines.
 

 We agree that the trial court's findings are insufficient to categorize the fiancé's payments as part of Ms. Gerber's gross income. The Child Support Guidelines define income to include both "rental of property" and "maintenance received from persons other than the parties to the instant action." 2015 N.C. Child Support Guidelines, AOC-A-162, Rev. 8/15, at 3. "Maintenance" in this context means financial support that one provides to someone else for that other person's benefit.
 
 Spicer
 
 ,
 
 168 N.C. App. at 288
 
 ,
 
 607 S.E.2d at 682
 
 .
 

 Thus, if Ms. Gerber were subleasing a portion of her home to her fiancé, his sublease payments would be income under the Guidelines. Similarly, if the fiancé's payments were intended to assist Ms. Gerber in paying her own household expenses, those payments properly could be treated as maintenance. Here, however, there was at least some competing evidence in the record indicating that the fiancé's payments were neither of these things, but instead were payments of the fiancé's share of household expenses that he incurred. In its findings, the trial court stated that these payments were used for "rent and utility bills which are all in Jill's sole name" but did not find that the payments
 
 *231
 
 were for Jill's benefit, rather than for her fiancé's share of rent and utilities incurred for his own benefit.
 

 To treat these payments as part of Ms. Gerber's gross income, the trial court first must resolve the competing evidence by finding that the payments indeed were maintenance under the Guidelines. From the existing findings, we cannot be sure that the trial court properly applied the legal definition of maintenance because the findings could be interpreted to include payments for the fiancé's share of expenses.
 
 See
 

 Spicer
 
 ,
 
 168 N.C. App. at 287
 
 ,
 
 607 S.E.2d at 682
 
 (holding that the trial court must "make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law"). We therefore vacate and remand for further proceedings.
 

 *510
 

 F. Income from the Charles Schwab account
 

 Finally, Ms. Gerber argues that the doctrine of judicial estoppel barred Mr. Kaiser from asserting that the Charles Schwab account was Ms. Gerber's property. She contends that in the equitable distribution consent order, the parties agreed that this account was "Wife's Father's Separate Property." Thus, Ms. Gerber argues, Mr. Kaiser is judicially estopped from now claiming the account is Ms. Gerber's property.
 

 We reject this argument because the record supports the trial court's finding that the income from the Charles Schwab account either belongs to Ms. Gerber or was given to her to use for her benefit. At the time of the child support order, the Charles Schwab account was in Ms. Gerber's name, she paid the taxes on the dividend income from that account, and there was no evidence that she was unable to use the income from that account to pay her expenses if she chose to do so.
 

 The purpose of a child support order is to accurately determine the parties' respective gross incomes to assess their ability to meet the needs of their children.
 
 Holt v. Holt
 
 ,
 
 29 N.C. App. 124
 
 , 126,
 
 223 S.E.2d 542
 
 , 544 (1976). The trial court's findings, supported by competent evidence in the record, show that the court properly treated the income from the Charles Schwab account as part of Ms. Gerber's gross income.
 

 II. Denial of Ms. Gerber's request to recover child therapy expenses
 

 Ms. Gerber next challenges the trial court's denial of her request to recover past and future expenses for child therapy for her children as part of Mr. Kaiser's child support obligations. The trial court found that these expenses-which were incurred to repair Mr. Kaiser's relationship with his children-resulted from Ms. Gerber's "active alienation of the minor children against their dad." As a result, the trial court determined that Mr. Kaiser did not need to share payment for any past therapy expenses and "is not obligated to pay [Ms. Gerber] for such therapy in the future to the extent it relates to issues associated with the minor children's relationship with [Mr. Kaiser]."
 

 Ms. Gerber contends that the trial court's finding concerning her efforts to alienate her children from Mr. Kaiser is "utterly at odds with the trial court's decision" to transfer the child custody dispute to an Illinois court that is a more convenient location for most of the witnesses who can address this issue in the custody context.
 

 We reject this argument. On appeal from the child support order, our review of the trial court's findings is limited to whether those findings are supported by competent evidence in the record.
 

 *511
 

 Hodges v. Hodges
 
 ,
 
 147 N.C. App. 478
 
 , 482,
 
 556 S.E.2d 7
 
 , 10 (2001). That a separate proceeding in another state may yield more detailed evidence on this issue is irrelevant.
 

 In the child support proceeding below, there was at least some competent evidence to support the trial court's finding that Ms. Gerber's conduct created the need for this child therapy. Accordingly, the trial court did not abuse its discretion in determining that Mr. Kaiser need not pay any portion of these child therapy expenses.
 
 Spicer
 
 ,
 
 168 N.C. App. at 287
 
 ,
 
 607 S.E.2d at 682
 
 .
 

 *232
 

 III. Credit for Mr. Kaiser's car payments
 

 Finally, Ms. Gerber challenges the trial court's decision to credit Mr. Kaiser for 17 payments he made toward Ms. Gerber's monthly car financing. She contends that the trial court failed to expressly find that an injustice would exist if the court did not apply this credit.
 

 "[T]here are no 'hard and fast rules' when dealing with the issue of child support credits. Instead, the controlling principle is that credit is appropriate only when an injustice would exist if credit were not given."
 
 Brinkley v. Brinkley
 
 ,
 
 135 N.C. App. 608
 
 , 612,
 
 522 S.E.2d 90
 
 , 93 (1999). When a "trial court properly awards a credit against a child support award, it should conclude in its written order that, as a matter of law, an injustice would exist if the credit were not allowed and should support that conclusion by findings of fact based on competent evidence."
 

 Id.
 

 Our review of the record indicates that the trial court would have been well within its sound discretion to credit these payments toward Mr. Kaiser's child support obligation had it made sufficient findings. But the court did not make that finding and we therefore vacate and remand for further proceedings.
 

 Conclusion
 

 As explained above, various portions of the trial court's child support order are unsupported by sufficient findings of fact. We therefore vacate the trial court's order. On remand, the trial court, in its discretion, may enter a new order based on the existing record, or may conduct further proceedings including a new evidentiary hearing if necessary.
 
 See
 

 Hendricks v. Sanks
 
 ,
 
 143 N.C. App. 544
 
 , 549,
 
 545 S.E.2d 779
 
 , 782 (2001).
 

 VACATED AND REMANDED.
 

 Judges BRYANT and DILLON concur.
 

 [1]
 

 There are also circumstances in which the trial court can impute a higher current income based on earnings capacity where the court finds that "the party deliberately depressed its income."
 
 Askew v. Askew
 
 ,
 
 119 N.C. App. 242
 
 , 244-45,
 
 458 S.E.2d 217
 
 , 219 (1995). This case does not involve any arguments concerning imputation based on earnings capacity.
 

 [2]
 

 Ms. Gerber also argues that her capital gains should be treated as irregular, non-recurring income and prorated over the period of time in which the asset was held. She can raise this argument on remand should the trial court determine that the facts do not support treating her capital gains as regular income.