IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-741

No. COA21-373

Filed 15 November 2022

Forsyth County, No. 17 CVD 941

KRISTI C. EIDSON, Plaintiff,

v.

THEOFANIS K. KAKOURAS, Defendant.

Appeal by defendant from orders entered 6 June 2019, 9 December 2019, 20 January 2021, and 26 March 2021 by Judge Lisa V. L. Menefee in District Court, Forsyth County. Heard in the Court of Appeals 8 February 2022.

> *Connell & Gelb PLLC, by Michelle D. Connell, and Fox Rothschild LLP, by Kip D. Nelson, for plaintiff-appellee.*
>
> *Carolyn J. Woodruff, Jessica Snowberger Bullock, and Y. Michael Yin, for defendant-appellant.*

STROUD, Chief Judge.

¶ 1 This appeal arises from an extraordinarily protracted and contentious child support case. After trying for ten years to obtain an order establishing Father's child support obligation, the parties managed to secure several orders including a 2021 Child Support Order, but for the reasons addressed below, we must vacate that order and several others and remand for additional proceedings and entry of a new order. Most unfortunately, both children have now attained the age of 18, so the child

support order on remand will be entirely for past support.

¶ 2          Defendant-Appellant ("Father") appeals from the 20 January 2021 Child Support Order ("Child Support Order") establishing permanent child support, the 26 March 2021 Amended Child Support Order ("Amended Order") correcting clerical mistakes as to the January Child Support Order, the 26 March 2021 order allowing Mother's Rule 59 motion to amend the January Child Support Order, the interlocutory 6 June 2019 Order ("2019 Order") establishing Father's income, and two orally rendered orders from 6 December 2019 denying Father's motion to change venue to Surry County and motion for reconsideration under Rules of Civil Procedure 59 and 60. Father argues the trial court erred in calculating each parent's income, erred in finding a substantial change in circumstances warranting modification of the 2011 Temporary Order establishing child support after it was deemed to have become permanent in 2014, and that the "delays in hearings and entry of an order made this case prejudicial to Appellant-Father and confused the trial court." (Capitalization altered.) We hold the trial court erred by relying on an undocumented stipulation to calculate child support based upon the parties' incomes in 2014 and 2016 instead of using the most current income information; erred in the calculation of the parties' incomes; and did not err in finding a substantial change of circumstances justifying modification of child support from both 2014 and 2016. We also hold the delays between the evidentiary hearings and the entry of the 2021 Child Support Order did

prejudice Father. We vacate the trial court's Child Support Order, Amended Order, and 2019 Order and remand for further proceedings.

## I. Background

¶ 3        The parties were married in 1997; their two children were born in 1998 and 2003. The parties separated in January 2011 and divorced in 2012. By the time of this appeal, both children had reached the age of majority.

¶ 4        Litigation regarding establishment of child support began in February 2011. Both parties resided in Surry County. Mother filed a complaint in Surry County seeking child custody, child support, an interim equitable distribution, and equitable distribution. Father counterclaimed for child custody and moved to dismiss the equitable distribution claim based upon the parties' premarital agreement. On 23 February 2011, the trial court in Surry County entered a Temporary Order, without prejudice, establishing temporary custody and child support. Father was ordered to pay child support of $1300 per month, beginning 1 March 2011, with Father to be reimbursed for any overpayment if the permanent child support obligation ended up being set at less than $1300 per month. The Temporary Order also required Father to continue paying the mortgage on the family home, as well as related maintenance expenses such as insurance and taxes, so Father was paying a total of $2600 to $3000

per month under the Temporary Order.[1]  The Temporary Order did not include detailed findings of fact but did include a child support calculation on Worksheet A, attached to the order.  The Worksheet only contains minimal information.  Worksheet A noted "Plaintiff (F)" had a gross income of $5,833 per month and "Defendant (M)" had no income; the Basic Child Support Obligation was $1,296 per month.  All other fields of the Worksheet, including "adjustments," contain a "0" or "0.00%."[2]  Thus, the Worksheet showed Father's child support obligation as $1,296 per month.

¶ 5        Later in 2011 and 2012, Mother filed motions regarding custody and visitation, alleging a dispute between the parties about Father's plans to take the children on a summer trip to visit family in Greece.  On 11 February 2013, the Surry County District Court began a hearing on the issue of child custody.  Following a five-day trial, the trial court entered an order 16 May 2013 establishing permanent child custody.  The 2013 Child Custody Order granted joint custody to the parties, with primary physical custody with Mother, and it set out detailed provisions regarding the parties' time with the children during summers, including allowing Father to take the children to Greece for four weeks during summers in even-numbered years.  The

---

[1] Father's obligation to pay the mortgage and home-related expenses was stated in the Temporary Order.  These numbers are based upon evidence from Father's amended Financial Standing Affidavits and arguments in our record.

[2] The Worksheet erroneously listed Father as Plaintiff and Mother as Defendant but it did clearly identify the parties by their first names and as "Mother" and "Father."  The parties are correctly identified on the Temporary Order itself.

Child Custody Order also decreed that:

> all other provisions of the prior Temporary Order in
> regards to the possession of real and/or personal properties,
> the payment of expenses, and the issue of child support, are
> not modified by the entry of this Order and are reserved by
> the Court for future hearing upon the scheduling of either
> party.

¶ 6        In September 2014, the parties entered into a Memorandum of Judgment resolving their claims regarding division of their property. In December 2014, Mother filed a "Motion to Establish Child Support" or in the alternative "Motion to Modify Child Support." She alleged the parties were still under the Temporary Order from 2011 and the Permanent Child Custody Order had been entered in 2013. She also alleged changes in circumstances since 2011, including changes in the parties' incomes, the change in the custodial schedule, and the fact that over three years had passed since the Temporary Order was entered. In addition, Father had purchased Mother's interest in the former marital home, so Father was no longer paying the mortgage and other household expenses under the 2011 Temporary Order for the benefit of Mother and the minor children.

¶ 7        In October 2015, Father filed a Motion for Judicial Appointment, requesting that the Administrative Office of the Courts appoint a judge to preside over the case

due to conflicts of interest with judges in District 17B.[3] In December 2015, Father filed a Motion for Deviation from the child support guidelines, alleging Mother had been receiving substantial income from gifts or contributions and free use of credit cards. In October 2016, Father filed a motion to modify child support alleging the oldest child had attained the age of 18 and graduated from high school in 2016.

¶ 8       In January 2017, Wife filed a motion to change venue of the case to Forsyth County. She alleged the case had been pending for five years, and despite many calendar requests and notices of hearing, only a few issues had been resolved. She also noted the existence of "conflicts" regarding the judges and parties in Surry County and alleged the parties consented to a change of venue to Forsyth County. On 30 January 2017, the trial court entered a Consent Order changing venue of the case to Forsyth County.

¶ 9       On 13 February 2017, the trial court in Forsyth County held a hearing to determine if the 2011 Temporary Order should be considered as a temporary order or a permanent order. On 21 February 2017, the trial court entered an order concluding that the 2011 Temporary Order had become a permanent order ("2017 Order"), so a

---

[3] The Forsyth County trial court's order of 21 February 2017 found two judges in the Stokes/Surry Judicial District had been "conflicted out of hearing this case;" one judge was a neighbor of Mother and another had a conflict arising from his 2014 campaign. These conflicts left only two other District Court judges in District 17B available to hear the case, with only two weeks of civil court per month in the district, so the unavailability of two judges and limited court time made the case difficult to schedule.

party must demonstrate a substantial change of circumstances from the date the order became "permanent" to modify the order. Specifically, the trial court concluded that:

> 3. By the time [Mother] filed her Motion to Establish and/or Modify Child Support on December 8th, 2014, enough time had passed such that the prior Order entered by Judge Neaves on February 23rd, 2011, had become permanent.
>
> 4. By the time [Father] filed his Motion to Modify Child Support on October 21st, 2016, enough time had passed such that the prior Order entered by Judge Neaves on February 23rd, 2011, had become permanent.

Neither party has noticed appeal from the 2017 Order, so we must review the orders on appeal in light of the 2017 Order. The trial court and parties have treated the issue of modification of child support as being modification from the 2011 Temporary Order ("the prior Order entered by Judge Neaves on February 23rd, 2011") based upon *both* dates, 2014 and 2016. It is not clear how, or why, the Temporary Order could *become* a permanent order twice, but that is what the 2017 Order says. Another possible interpretation of the Temporary Order becoming permanent *twice*, in both 2014 and 2016, would be that it became permanent in 2014; it was "modified" in 2016 and thus became permanent again; and then it would be modifiable thereafter using 2016 as

the baseline "permanent" order.[4]  But that is not the interpretation of the dates of the order becoming "permanent" twice the parties and trial court used in the hearings, so we will treat the modification as being from the 2011 baseline in both 2014 and 2016, only because the 2017 Order was not appealed and that was the approach taken before the trial court.

¶ 10        In late 2017 and early 2018, both parties filed various motions regarding the child support matter and both filed updated financial affidavits.  On 24 January and 11 April 2018, the trial court held hearings to determine Father's income for 2014 and 2016.  Apparently, the purpose for holding a hearing to establish his income for only these particular years was to establish the baseline for consideration of the motions to modify child support, based upon the trial court's February 2017 Order which held the 2011 Temporary Order became a permanent child support order in both 2014 and 2016.[5]  On 6 June 2019, the trial court entered an order establishing

---

[4] We suggest that entering an order to declare one prior temporary child support order as "permanent" on two different dates without making the findings as to the relevant circumstances as of the dates of both the newly-declared "permanent" orders fails to simplify the case; here, the declaration of permanency—twice—has made our review incredibly complex.  And since a modification of child support can relate back to the date of the motion to modify—unlike a child custody modification—it is not clear to us why there would ever be any need for a declaration of permanency.  But neither party appealed this order, and we must proceed accordingly.

[5] If the 2011 Temporary Order became a permanent order in 2016, the holding in the 21 February 2017 Order that the Temporary Order became permanent in 2014 would normally be irrelevant to our analysis.  We would consider only 2016 as the baseline for modification going forward.  But as noted above, we are bound by the trial court's order

the parties' incomes from 2014 and 2016 ("2019 Order"). The primary focus of the 2019 Order is Father's income so it includes detailed findings of fact regarding Father's businesses, restaurants, rental properties, transfers of funds to Greece, foreign bank accounts, and other matters. In short, Father's sources of income are complex and the amounts of income vary year to year. The trial court found Father's income for 2014 as $297,618, and his income for 2016 as $345,098.

¶ 11      On 17 June 2019, Father filed a motion to change venue of the case back to Surry County and a motion for reconsideration under Rules 59 and 60. In November 2019, Mother filed a new financial affidavit. In December 2019, Father filed "Objections and Defenses" alleging discrimination based upon his national origin, as he was from Greece; he alleged that "[i]n the time-honored tradition of immigrants, Defendant Father has remitted funds to his family in Greece and thee [sic] funds have never been available for the child's accustomed standard of living." He also alleged, as to "Due Process and Notice" that "[t]o say that the Temporary Child Support Order of Judge Neaves became permanent before its declaration as a permanent order by Judge Sipprell on February 21, 2017, constitutes a lack of notice to Defendant Father that the order had become permanent" and "[t]here should be no retroactivity prior to February 21, 2017."

---

establishing both 2014 and 2016 as the points when the 2011 Temporary Order became permanent.

¶ 12    The trial court held another hearing regarding child support on 9 and 10 December 2019. At the start of the hearing, the trial court noted there had been a "chambers meeting" with counsel and the hearing "is a continuation of child support hearing" and the "first part of the hearing" was in 2018, referring to the hearing to establish Father's income for 2014 and 2016. Counsel for each party addressed various pending motions, including Father's motions for change of venue and Father's Motion under Rule 59 and 60; the trial court orally denied the motions for change of venue and the Rule 59 and 60 motion, although no written order was ever entered. Both parties then presented evidence regarding their incomes and expenses and the expenses of the children. The trial court took the matter under advisement and did not render a ruling at the close of the trial.

¶ 13    Before the order was entered, the COVID-19 pandemic began, and Governor Roy Cooper issued various executive orders restricting activities. Some of the executive orders affected the operations of restaurants. One of the initial executive orders related to COVID-19 on 17 March 2020, Executive Order No. 118, limited the operations of restaurants to "Carry-Out, Drive-Through, and Delivery Only." Office of Governor Roy Cooper, Executive Order No. 118 (March 17, 2020), https://governor.nc.gov/media/1760/open.

¶ 14    On 5 May 2020, Father filed another Motion to Change Venue back to Surry County, alleging that neither party resides, works, or owns property in Forsyth

County.  He also alleged that "[d]ue to the outbreak of COVID-19, a statewide Stay at Home Order has been issued that severely limits unnecessary travel," (capitalization altered), and that the change of venue back to Surry County would reduce unnecessary travel for both parties.  Father also filed a Motion to Modify Child Support.  He alleged modification of child support was necessary based on substantial changes in circumstances "since the entry of said Order[6] and since the last set of hearings[.]"  Father alleged specifically that the Temporary Order was entered in 2011, and "[a]n Order was entered on February 21, 2017, whereby the Temporary Order of 2011 was decreed to be permanent and modifiable."  He further alleged that his income was "significantly reduced" since the entry of the Temporary Order and the prior hearings based upon COVID-19.  He alleged he had to close one of his restaurants and his other restaurant was limited to only "take-out/curbside" orders. He alleged it was uncertain when his restaurants would be allowed to re-open or operate at full capacity, or if the restaurants would be able to operate at the previous capacities after the pandemic.  He therefore requested the trial court to "[r]eview and re-calculate Defendant Father's child support obligations based upon the current circumstances of the parties."

---

[6] He does not clearly identify "said order" but earlier in the motion he asks to modify "a prior Order of this Court for child support."  The only "prior order" is the 2011 Temporary Order, which was later deemed to be "permanent" as of 2014 and 2016.

¶ 15        On 23 December 2020, Father filed a Motion to Re-Open Evidence for Defendant's Current Income, "or in the alternative, grant a mistrial under Rule 59 . . . , or in the alternative, dismiss [Mother]'s Motion under Rule 41 for failure to prosecute." He alleged that the motion for modification of child support "being heard" was filed in 2014, a motion to modify was filed in 2016, and neither motion had yet been ruled upon. He alleged the hearing regarding child support started on 24 January 2018; the last day of testimony in the child support hearings was 10 December 2019. He alleged:

> Since December 10, 2019 (the last hearing date), the world has been engulfed in a GLOBAL PANDEMIC, to which the world has not experienced in a hundred years. Restaurants have particularly been devastated. This GLOBAL PANDEMIC WAS NOT PREDICTABLE OR KNOWN TO THE [FATHER] OR THE UNDERSIGNED ON December 10, 2019.

(Emphasis in original.)

¶ 16        Father then made detailed allegations regarding the effects of the COVID-19 closures on restaurants in general and his restaurants in particular, including his loss of income, increases in business expenses, lack of business interruption insurance, and reductions in profits.

¶ 17        On 20 January 2021, the trial court entered its Child Support Order. The Child Support Order notes that it is based upon the hearing held on 9 and 10 December 2019, addressing the various motions regarding child support filed by both parties,

and noted that "a portion of which has already been heard on January 24 and 25, 2018 and April 11, 12 and 13, 2018." The Child Support Order includes extensive findings of fact addressing the procedural oddities of this case as well as the incomes and expenses of the parties and children. The findings of fact address primarily income and expenses as of 2014 and 2016; none of the findings address income or expenses as of 2019. And since no evidence was taken after the December 2019 hearing dates, none of the findings address income or expenses for 2020 or 2021, including any effects of the COVID-19 pandemic closures of Father's restaurants—the restaurants the trial court found were a substantial source of Father's income based upon the evidence presented as to 2014 and 2016. Of particular note, the trial court also found:

> 18. Counsel for both parties *stipulated on the record* that the first calculation of child support should be effective in 2014, using 2014 income figures and that the second calculation of child support should be effective in 2016, using 2016 income figures.

(Emphasis added.) However, we have been unable to find any such stipulation in any part of the Record on Appeal or transcripts.

Mother then filed a motion for reconsideration pursuant to Rules 59 and 60 on 1 February 2021 alleging clerical errors. On 3 February 2021, Father filed his first notice of appeal, and gave notice of appeal from:

(1) the Child Support Order signed on January 20, 2021

and entered on January 20, 2021 by the Honorable Lisa V.L. Menefee;

(2) The Order signed on June 6, 2019 and entered on June 6, 2019 by the Honorable Lisa V.L. Menefee;

(3) The Order of the District Court in Forsyth County orally rendered on December 9, 2019 by the Honorable Lisa V.L. Menefee denying [Father's] Motion to Change Venue filed June 17, 2019.  There is no written Order entered on this Motion, nor did the Court direct one be prepared; and

(4) The Order of the District Court in Forsyth County orally rendered on December 9, 2019 by the Honorable Lisa V.L. Menefee denying [Father's] Motion Pursuant to Rule 59 (1) (4) (7) (8) (9) and Rule 60(b)(1) (2) (6) filed June 17, 2019.  There is no written Order entered on this motion, nor did the Court direct one be prepared.

The trial court then granted Mother's motion for reconsideration and entered an Amended Child Support Order on 26 March 2021.[7]  Father filed a second notice of appeal from the Amended Order and the order allowing Mother's motion for reconsideration on 31 March 2021; the second notice of appeal also restated his first notice of appeal "for purposes of protecting the original appeal notice filed February 3, 2021[.]"

---

[7] In the Amended Order, the trial court changed two provisions in the decretal portion of the original Child Support Order.  The trial court (1) added a deadline of 20 May 2021 for payment of past-due child support payments due from 16 December 2014 through 20 October 2016 and (2) added a 240-day time frame, including a deadline of 20 September 2021, for child support payments due after 21 October 2016.  The Amended Order did not address any of Father's motions filed after the December 2019 hearing. The Amended Order also made formatting changes, but no substantive changes.

## II. Jurisdiction

Father filed two timely Notices of Appeal, the first on 3 February 2021 and the second on 31 March 2021. The Amended Order is a final order establishing permanent child support. We recognize additional motions were filed prior to the trial court's January and March 2021 orders that were not ruled upon, including Father's 5 May 2020 motion to change venue to Surry County, Father's 5 May 2020 motion to modify child support based upon the pandemic restrictions on his restaurants, and Father's 23 December 2020 "Motion to Re-Open Evidence for Defendant's Current Income." But these pending motions or any other motions which may have been filed after appeal of the March 2021 Amended Child Support Order do not change the status of that Order as a final appealable order.

The 2019 Order was an interlocutory order, and Father properly preserved his right to appeal the 2019 Order after entry of the final Amended Order. This Court has jurisdiction under North Carolina General Statute § 7A-27(b)(2) to address the merits of Father's appeals. N.C. Gen. Stat. § 7A-27(b)(2) (2021) (effective 1 January 2019 to 30 June 2021).

## III. Analysis

On appeal, the parties present various arguments regarding whether the trial court erred by establishing child support based upon the parties' incomes and expenses and the children's expenses as of 2014 and 2016—five and seven years,

respectively, before the effective date of the Amended Order. Father notes child support is supposed to be based upon the income and expenses as of the time the order is effective. He notes the last evidence was taken in December 2019, prior to the COVID-19 pandemic, and his child support obligation was erroneously based upon his 2014 and 2016 incomes, while his income was reduced by the closures and limitations of operation of his restaurants in 2020 and 2021.

¶ 22 At the outset, we will clarify what this appeal addresses and what it cannot address. This Court cannot address a motion which has not been heard and upon which the trial court has not entered an order. N.C. R. App. P. 10(a)(1). The Amended Order on appeal was entered on 26 March 2021, based upon evidence up to December 2019. On 5 May 2020, after completion of the hearings but before entry of the Child Support Order, Father filed a "Verified Motion to Modify Child Support" and on 23 December 2020 filed a "Motion to Re-open Evidence for Defendant's Current Income," (capitalization altered), due to the impact of the COVID-19 pandemic closures on his restaurants, but these motions have not been heard. Since Father filed his motion to modify child support on 5 May 2020, he still has the opportunity for the trial court to consider modification effective as of 5 May 2020. S*ee Chused v. Chused*, 131 N.C. App. 668, 672, 508 S.E.2d 559, 562 (1998) (quotation and citations omitted) ("A supporting parent 'has no authority to unilaterally modify the amount of the [court ordered] child support payment. The supporting parent must [first] apply to the trial court for

modification.' The trial court then has the authority to enter a modification of court ordered child support, retroactive to the filing of the petition of modification."). This appeal does not address or eliminate Father's pending motion for modification or any other motions filed after this appeal was taken. Thus, we will consider Father's appeal based on what is in the record before us: the evidence and status of the case as of the 26 March 2021 Amended Child Support Order, in turn based upon evidence of income and circumstances existing as of December 2019. Our analysis does not address any of the alleged changes in income or other circumstances wrought by the COVID-19 pandemic closures; those remain for the trial court to address, if properly presented to the trial court, after this appeal is concluded.

¶ 23    For purposes of determining a substantial change in circumstances, the Temporary Order was deemed to have "become permanent" as of 8 December 2014 and as of 21 October 2016, because no party has appealed the trial court's 21 February 2017 Order establishing the permanency of the 2011 Temporary Order.[8] Thus, the 2014 and 2016 circumstances and determinations of income and child support—based upon the 2017 Order holding the 2011 Temporary Order became "permanent" as of 2014 and 2016—forms the baseline for consideration of modification based upon a

---

[8] There is no evidence of the parties' actual incomes or expenses in 2011 when the Temporary Order was entered and no order ever addressed the circumstances of the parties or children in 2011.

substantial change of circumstances thereafter, up to and including calculations of child support for each year from 2014 through 2019, as the trial court received evidence only up to December 2019.

## A. Standard of Review

"Child support orders entered by a trial court are accorded substantial deference by appellate courts and our review is limited to a determination of whether there was a clear abuse of discretion." *Simms v. Bolger*, 264 N.C. App. 442, 447, 826 S.E.2d 522, 527 (2019) (quoting *Leary v. Leary*, 152 N.C. App. 438, 441, 567 S.E.2d 834, 837 (2002)). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988); *see also White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985) ("A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason . . . [or] upon a showing that [the trial court's decision] was so arbitrary that it could not have been the result of a reasoned decision.").

"In a case for child support, the trial court must make specific findings and conclusions. The purpose of this requirement is to allow a reviewing court to determine from the record whether a judgment, and the legal conclusions which underlie it, represent a correct application of the law." *Simms*, 264 N.C. App. at 447,

826 S.E.2d at 527 (quoting *Leary*, 152 N.C. App. at 441-42, 567 S.E.2d at 837). Findings of fact must be supported by competent evidence. *Atwell v. Atwell*, 74 N.C. App. 231, 234, 328 S.E.2d 47, 49 (1985). Findings are "deemed to be supported by competent evidence and are binding on appeal" unless specifically challenged by an appellant. *Ward v. Halprin*, 274 N.C. App. 494, 498, 853 S.E.2d 7, 10 (2020). "In short, the evidence must support the findings, the findings must support the conclusions, and the conclusions must support the judgment . . . ." *Atwell*, 74 N.C. App. at 234, 328 S.E.2d at 49.

## B. Income Determinations

¶ 26      Father asserts the trial court made multiple errors when calculating the parties' incomes and challenges specific findings of fact. Father argues the trial court erred by not using his current income, by relying upon a non-existent stipulation limiting the parties' incomes for the purposes of calculating child support, by incorrectly calculating his 2014 and 2016 income, and by incorrectly calculating Mother's income. For the reasons below, we vacate the trial court's Child Support Order, Amended Order, and 2019 Order establishing Father's income.

### 1. *Stipulation regarding use of incomes from 2014 and 2016*

¶ 27      We first address Father's arguments about the stipulation limiting both parties' incomes to 2014 and 2016 for purposes of calculating child support. Father also specifically challenges the findings in the trial court's January and March 2021

child support orders regarding the income stipulation as unsupported by competent evidence. Finding 18 in both child support orders states:

> Counsel for both parties stipulated *on the record* that the first calculation of child support should be effective in 2014, using 2014 income figures and that the second calculation of child support should be effective in 2016, using 2016 income figures.

(Emphasis added.)

¶ 28        Throughout the record and transcripts of the 2018 evidentiary hearings, it is apparent that counsel for both parties were limiting their inquiry into the parties' incomes to the years 2014 and 2016 according to an agreement between counsel. Presumably, the parties and court limited the income inquiry to 2014 and 2016 because these are the years Mother and Father respectively made their motions to modify child support and the court intended to calculate past-due, prospective child support, or to establish a baseline for "current income" and a child support obligation for the purposes of considering the motions to modify for the first hearings in January 2018. 2014 and 2016 are also the years the trial court deemed the 2011 Temporary Order to have "become permanent." But despite Finding 18's claim the parties had stipulated "on the record," we have searched the transcripts and record in vain for a clear stipulation of any sort. Nowhere in the record before us is there evidence of a stipulation to *establish* child support based only upon income figures from 2014 and 2016. We can glean the existence of an off-the-record agreement to limit the evidence

presented at the 2018 hearing for the purpose of establishing Father's income as of 2014 and 2016, because these were the dates the 2011 Temporary Order became "permanent," by references made by counsel as to an agreement. But nowhere can we find terms of a stipulation to calculate child support entirely based upon the 2014 and 2016 numbers, let alone in 2021—five to seven years after each respective motion to modify child support.

¶ 29       Stipulations are favored, but any stipulation must be clearly shown in the record and each party must agree to its terms:

> [C]ourts look with favor on stipulations designed to simplify, shorten, or settle litigation and save cost to the parties, and such practice will be encouraged. While a stipulation need not follow any particular form, *its terms must be definite and certain in order to afford a basis for judicial decision, and it is essential that they be assented to by the parties or those representing them.* Once a stipulation is made, a party is bound by it and he may not hereafter take an inconsistent position.

*Stovall v. Stovall*, 205 N.C. App. 405, 409, 698 S.E.2d 680, 683 (2010) (emphasis added) (quotation omitted). Oral stipulations must be reduced to writing, and if not reduced to writing the stipulation "must affirmatively appear in the record that the trial court made contemporaneous inquiries of the parties at the time the stipulations were entered into." *McIntosh v. McIntosh*, 74 N.C. App. 554, 556, 328 S.E.2d 600, 602 (1985) (discussing the procedure regarding stipulations as applied to an equitable distribution proceeding). Upon review, the record must show the trial court "read the

terms of the stipulations to the parties; that the parties understood the legal effects of their agreement and the terms of the agreement, and agreed to abide by those terms of their own free will." *Id.*

¶ 30        An example of appropriate reliance on a stipulation may be found in *Estate of Carlsen v. Carlsen*. 165 N.C. App. 674, 599 S.E.2d 581 (2004). In *Carlsen*, the parties had stipulated that the decedent lacked the testamentary capacity to execute a will, trust revocation, and promissory note. *Id.* at 676, 599 S.E.2d at 583. The stipulation also stated each document was invalid, null, and void. *Id.* The trial court entered a judgment based on the stipulation invalidating the documents. *Id.* However, unlike here, the trial court's order included "the exact language of the stipulation in its entirety." *Id.* at 679, 599 S.E.2d at 585. This Court concluded "the language of the stipulation was sufficiently definite and certain to form a basis for a judicial decision." *Id.* "In such a case where the testimony is in agreement, the stipulation is clear as to its impact, and the parties were present and aware of their actions, the stipulation is valid." *Id.*

¶ 31        This case is not like *Carlsen*. There is simply no specific stipulation in the transcripts or record on appeal. We can determine, from representations by counsel for both parties in the transcripts, at some point prior to the trial court's hearings on this matter in 2018 counsel for both parties agreed to limit the court's inquiry at these evidentiary hearings to the parties' incomes in the years 2014 and 2016. As best we

can tell the parties agreed to limit their presentation of evidence on the pending motions to modify the Temporary Order to address the parties' incomes in 2014 and 2016. Since the 2011 Temporary Order had been declared permanent by 2014, Mother's 2014 motion to modify would have required an analysis into each party's "current" income and expenses and the children's needs in 2014. If the 2014 motion to modify had been timely resolved, the trial court would have been engaging in the same analysis again in 2016 after Father filed his motion to modify, so evidence regarding income, expenses, and needs as of 2016 would be required.

¶ 32    The record is replete with references to an agreement to limit the presentation of evidence at the 2018 hearings to address income in 2014 and 2016. The parties apparently agreed not to present evidence regarding the period from 2011 to 2014, after entry of the Temporary Order until the Temporary Order was declared "permanent." There are numerous statements within the transcript of the various hearings that substantially confirm the existence of an agreement. One example is:

> [MOTHER'S TRIAL COUNSEL]: Your Honor, I could be wrong, the Court has a copy of the -- *we stipulated, for the purposes of this proceeding, that we are going to move forward with evidence related to 2014 and 2016 income information for these folks.* . . . I completed my evidence as it relates to demonstration of what the income was for 2014 and 2016. *When I even tried to present any evidence about anything that occurred prior to 2014*, I received heavy objections from [Father's Trial Counsel] that it was *outside of the timeframe of the evidence that the Court asked us to present.* . . . *I believe that the direction that we've received*

> *from this Court and that we stipulated and agreed to, as professionals, was that we're going to limit our evidence to 2014 and 2016 income.*

(Emphasis added.) Another is:

> [MOTHER'S TRIAL COUNSEL]: Your Honor, we've been living with this case a whole lot longer than [Father's Third Trial Counsel and Appellate Counsel] has. And I would submit to the Court that in response to her motion to dismiss, with all due respect, we were here for five days presenting detailed evidence *with regard to the financial circumstances of these parties for two different time frames, by consent, by stipulation.*

(Emphasis added.) A third example is a statement by the trial court that: "Court had to determine the actual income of the [Father]. The attorneys representing both the [Father] and the [Mother], selected two different years that they wished [the] Court to focus on. It was 2014 and, I believe, 2016."

¶ 33          But nowhere within the transcript of the proceedings or within the Record on Appeal do we have before us the actual terms of any stipulation on how to use the income numbers from 2014 and 2016. No oral stipulation affirmatively appears in the record, nor has it been reduced to a writing. *See McIntosh*, 74 N.C. App. at 556, 328 S.E.2d at 602. We can easily infer that *some* agreement existed to limit the presentation of evidence at the 2018 hearing, but there is no indication the parties stipulated Father's income in 2014 or 2016 would be used as the basis for a child support order entered years later. On the record before us, it appears the trial court

had no factual or legal basis upon which to enter an order in 2021 which set the child support obligation based upon the incomes of the parties five to seven years earlier.[9] Thus, Finding 18 is not supported by the evidence; there was no stipulation sufficiently stated in the record.

¶ 34        "It is well established that child support obligations are ordinarily determined by a party's actual income at the time the order is made or modified." *Ellis v. Ellis*, 126 N.C. App. 362, 364, 485 S.E.2d 82, 83 (1997) (citing *Greer v. Greer*, 101 N.C. App. 351, 355, 399 S.E.2d 399, 402 (1991)) (other citations omitted).  The trial court erred by entering an order in 2021 basing child support on income determinations from 2014 and 2016 because no stipulation existed on the record to calculate child support based only upon income from those years.  Although the trial court would have to address child support for each year from 2014 through 2019, the child support obligations may be different for various time periods.  Here, based on the parties' motions to modify, these time periods may be from 2014 until 2016 and then from 2017 until the date of entry of the order.  Based upon evidence of income and

---

[9] Even the parties are unable to point to a location in the record where the stipulation may be referenced. Mother argues "[t]his [stipulation] was referenced time and time again throughout the trial tribunal proceedings."  However, Mother fails to cite anywhere in the record that any stipulation may be found.  As noted above, any stipulation "must affirmatively appear in the record" and the trial court must have "made contemporaneous inquiries of the parties at the time the stipulations were entered into." *McIntosh*, 74 N.C. App. at 556, 328 S.E.2d at 602.

circumstances during this time period, there may be other periods for child support calculations if incomes, expenses, and needs are different in other years. As one obvious example of a change involving the needs of the children, the oldest child attained the age of 18 in 2016, and the younger child attained the age of 18 in 2021. In any event, the trial court should have used the parties' current incomes to establish child support. Even without a stipulation, it would be appropriate to use the income determinations from 2014 and 2016 as baselines for modification and to calculate child support for 2014 and 2016, but these income numbers cannot be the basis of a child support order in 2021 without a clear stipulation to use these income numbers instead of current income.

¶ 35          There are some circumstances where the trial court can use prior income to calculate current income for the purposes of child support, but specific findings of fact are required to allow use of income from prior years:

> Again, " '[i]t is well established that child support obligations are ordinarily determined by a party's actual income at the time the order is made or modified.' " *Kaiser v. Kaiser*, [259] N.C. App. [499], [505], 816 S.E.2d 223, 228 (2018) (quoting *Ellis* [*v. Ellis*], 126 N.C. App. [362, ] 364, 485 S.E.2d [82, ] 83 [(1997)]). "Although this means the trial court must focus on the parties' current income, past income often is relevant in determining current income." *Id.* Under certain circumstances, " 'a trial court may permissibly utilize a parent's income from prior years to calculate the parent's gross monthly income for child support purposes.' " *Id.* (quoting *Midgett v. Midgett*, 199 N.C. App. 202, 208, 680 S.E.2d 876, 880 (2009)). For

> example, this Court has recognized such an approach is permissible where the income is highly variable or seasonal, or where the evidence of income is unreliable. *Id.* "What matters in these circumstances is the reason *why* the trial court examines past income; the court's findings must show that the court used this evidence to accurately assess current monthly gross income." *Id.*

*Simms*, 264 N.C. App. at 453, 826 S.E.2d at 530 (emphasis in original). The trial court must make specific findings to support the use of prior income in calculating current income. *See id.*; *see also Kaiser*, 259 N.C. App. at 504-505, 816 S.E.2d at 228.

Here, the trial court did not make findings justifying the use of Father's income five and seven years prior to entry of the Amended Order. The trial court appears instead to have relied upon an undocumented stipulation and entered an order relying upon the parties' past incomes. The trial court is permitted to determine a support obligation based on prior income only if it makes specific findings of fact justifying the use of prior income to calculate Father's past child support obligations. *See id.*; *see also Zurosky v. Shaffer*, 236 N.C. App. 219, 245, 763 S.E.2d 755, 771 (2014). These specific findings are also required to calculate past-due, prospective child support. *See Simms*, 264 N.C. App. at 453, 826 S.E.2d at 530-31 ("The use of Defendant's historical income to calculate prospective child support in the form of arrears dating back to the filing of Mother's Motion without any finding to support the use of this method was error. . . . On remand, the trial court should . . . make

findings to support its use of Defendant's historical income to calculate arrearages.").

¶ 37 The trial court erred by entering the 2021 Child Support Order and Amended Order relying on 2014 and 2016 income determinations. No stipulation exists in the record to support the trial court's use of income from only these years. The 2021 child support orders are vacated and remanded for entry of a new order.

### 2. *2019 Order*

¶ 38 In addition to the failure of the alleged stipulation as a basis for calculating income and child support in the 2021 orders, Father challenges aspects of the 2019 Order. This Order did not establish child support or address the motions to modify but only addressed the parties' incomes for 2014 and 2016. Father also challenges specific findings from the 2019 Order and alleges the trial court made mathematical errors in calculating his and Mother's incomes. "In child support cases, determinations of gross income are conclusions of law reviewed *de novo*, rather than findings of fact." *Thomas v. Burgett*, 265 N.C. App. 364, 367, 852 S.E.2d 353, 356 (2019) (citing *Lawrence v. Tise*, 107 N.C. App. 140, 145 n.1, 419 S.E.2d 176, 179 n.1 (1992)). "If the trial court labels a conclusion of law as a finding of fact, the appellate court still employs *de novo* review." *Id.* (citing *Carpenter v. Brooks*, 139 N.C. App. 745, 752, 534 S.E.2d 641, 646 (2000); *Eakes v. Eakes*, 194 N.C. App. 303, 311, 669 S.E.2d 891, 897 (2008)).

### a. *Father's Rental Income*

¶ 39        The trial court's findings state that it calculated Father's income "pursuant to the North Carolina [C]hild [S]upport [G]uidelines." Father argues the trial court erroneously omitted rental expenses when calculating Father's rental income, and "Findings 34 and 35 use the erroneous rental income figures were [sic] to determine [Father]'s total annual and monthly income in 2014 and 2016." In the 2019 Order, the trial court found Father's rental income to be $64,800 in 2014 and $90,804 in 2016. Father notes that these numbers are equal to the aggregate "Gross Rent" from his properties as reflected on Schedule E of his 2014 and 2016 tax returns. Father also notes his tax returns list a number of expenses, and "the trial court failed to deduct any 'repairs, property management and leasing fees, real estate taxes, insurance, and mortgage interest' from the gross rents received." After deduction for these expenses, Father argues his rental income should have been $7,990 for 2014 and $28,272 for 2016. He contends any commingling of funds should not result in these expenses being omitted, because "the rental expenses are no less legitimate because they are paid with a source other than rental income."

¶ 40        Father cites the 2019 revision of the North Carolina Child Support Guidelines and asserts "gross income from rent is defined as gross receipts minus ordinary and necessary expenses required for self-employment or business operation." (Emphasis and ellipses omitted.) Notably, the Guidelines tend to support Father's calculation,

but the Guidelines also state "[o]rdinary and necessary business expenses do not include amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses, investment tax credits, *or any other business expenses determined by the court to be inappropriate for determining gross income*." North Carolina Child Support Guidelines p. 3 (2019) (emphasis added). The Guidelines also state "[e]xpense reimbursements or in-kind payments . . . received by a parent in the course of employment, self-employment, or operation of a business are counted as income *if they are significant and reduce personal living expenses*." *Id.* (emphasis added).

¶ 41        At the 2018 evidentiary hearings, a great amount of evidence detailed Father's commingling of his personal and business finances, including income and expenses from his rental properties. The trial court also found, when calculating Father's income, that "[w]ith only a few minor exceptions expenses in connection with [Father's] rental properties were in the form of loans to shareholder from [Father's businesses] to [Father]. The Court did not credit [Father] for these expenses against his gross monthly income . . . in determining his gross income." The trial court elected not to credit Father for the expenses connected to his rentals after finding a significant commingling of Father's finances and that many of Father's personal expenses were in fact paid for by Father's businesses. For example, the trial court found "[Father] does not report cash received from rental properties. [Father's

Accountant] does not break down expenditures paid with a business check to determine which portion of the payment was business related and which portion was for personal expenses if not notated by [Father]." The trial court also found:

> At times there were receipts for taxes paid from a county tax office saying "cash" but with no information as to what property taxes were being paid. For the year 2014 property taxes for [Father]'s commercial property in South Carolina were paid by KA because [Father] could not pay them from his personal account. [Father's Accountant] did not know who held the rental mortgages or how they were paid. For 2014 he never saw a receipt for insurance expenses for [Father]'s rental properties.

The trial court also found:

> What is abundantly clear is there has been a pattern of [Father] using one or both of his businesses for cash withdrawals and/or checks to pay for many of these obligations without any documentation to identify these as personal. There was a commingling of business and personal expenses when it came time to pay invoices/bills whether paid by cash or check.

The court found that Father's businesses paid for various personal and rental expenses for Father, including "lawn care for personal and rental properties" and Father's property taxes. The court also found that one of Father's businesses pays its rent directly to Father, the payment is "charged as loan to shareholder," and the rent payment is "then reversed out of loan to shareholder and treated as a rental expense." The court also found "[t]hese payments have been consistent over time, are reoccurring, are significant and reduce [Father]'s personal living expenses."

¶ 42        However, the trial court's findings do not show the trial court clearly intended to omit all rental expenses when calculating Father's net rental income. "[T]he trial court was required to explain its decision relative to the evidence of such expenses submitted by [Father]. Without any evidence indicating the trial court's contemplation of those expenses, we do not have enough findings to conduct adequate review." *Thomas*, 265 N.C. App. at 368, 852 S.E.2d at 357. Instead, the trial court omitted *all* rental expenses, including expenses like mortgage interest; this was not discussed in the court's findings yet omitted anyway. Upon remand, the trial court should include more specific findings showing "that due regard was taken of the requisite factors[,]" and why the trial court chose not to credit Father with any rental expenses when determining his net rental income under the Guidelines. *See id.* (quoting *Burnett v. Wheeler*, 128 N.C. App. 174, 176, 493 S.E.2d 804, 806 (1997) (in turn citing *Coble v. Coble*, 300 N.C. 708, 712, 268 S.E.2d 185, 189 (1980))).

### b.  Father's "Loan to Shareholder" Income

¶ 43        Father also argues his income was incorrectly calculated because shareholder loans made to Father from his businesses were double counted in the trial court's calculations as a stand-alone source of income and within the businesses' profits. Father argues "[a] loan is a borrowing from some pot of money, and in this case is from the 'Profits' of the businesses." Father argues the trial court made a mathematical error by not realizing that the loans were "just a portion of the profits

which were borrowed upon."

¶ 44        At the evidentiary hearings, the court heard testimony from Father's accountant, Mr. Logeman, as to how Father removes money from his businesses to pay for his personal expenses. Mr. Logeman testified money removed from Father's businesses to pay Father's personal expenses is treated as "loans to shareholder," and Mr. Logeman determines the value of these loans by compiling receipts handed to Mr. Logeman "in a plastic grocery bag every month by [Father] along with a handwritten log of cash out prepared by [Father] every month for KA/Theo's[,]" "handwritten sales receipts for KA[,]" receipts for various personal purchases Father reimburses himself for by removing cash from his businesses' registers, discrepancies between "gross sales and taxes payable and the bank statements" for the businesses, and other sources. Father's finances are complex, and considering his use of cash and hand-written logs, it is not clear how the sum of these "loans" was calculated; the trial court's order does not clearly state how it arrived at the final values in Findings 34 and 35 of the 2019 Order.[10]

¶ 45        The trial court found that income categorized as "loans to shareholder" included generally all funds available to Father that he could withdraw from his businesses to pay personal expenses, and that Father "has never reimbursed the

---

[10] However, Mr. Logeman also testified as to these practices, and the court found "[t]his behavior is not unusual in this industry but makes tracking 'income' difficult."

business for his loans nor has he paid any interest on" the "loans to shareholder." Father notes Finding 8(c) in the 2019 Order clearly shows the relationship between profits and shareholder loans:

> c.     . . . Profit is the amount of money on IRS Form K-1 of the tax returns. "Profit" for an S Corporation is taxed on the periodic return. Once taxed it goes into a "retained earnings account." The shareholder, [Father] in this case, *can take money out of that account by taking a distribution check or paying personal expenses and not get taxed again on the funds.*

(Emphasis added.) Father asserts this finding shows that the trial court "was close" but "what the trial court does not accurately understand is that money is not additional income." The trial court's ultimate findings of fact included separate categories for both "Profit" and "'Loan to shareholder' income." The trial court appears to have characterized the payment of Father's personal expenses through business income as shareholder loans, and also found that Father can claim the entirety of his businesses' profits as income.

¶ 46     Additionally, the court appears to have found two different values for these loans for both 2014 and 2016. In the 2019 Order the trial court's ultimate findings of fact found Father's total income to include $98,196 from business profit and $44,870 in "loan to shareholder" income for 2014; in 2016 Father's total income included $110,244 from business profit and $54,298 from "loan to shareholder" income. But the trial court also found:

> 18. The total of confirmed and documented loans to [Father] shareholder in 2014 was $51,231.00 from KA/Theos. The figure represents money paid by KA for [Father] based on information given to Mr. Logeman. The total of confirmed and documented loans to [Father] shareholder in 2016 was $69,681.00 based on the check ledgers and information given to Mr. Logeman. . . .

The trial court does not make clear how it calculated any of the totals cited above. It generally lists some expenses as loans, but then provides two different aggregate totals for the loans for each year. None of the trial court's other findings clarify this discrepancy.

¶ 47 We are unable to tell how the evidence presented in the 2018 hearings supports the court's findings. *See Atwell*, 74 N.C. App. at 234, 328 S.E.2d at 49. Because of the inconsistency in the trial court's findings and the difficulty in following the trial court's calculations, we vacate and remand for additional findings on how precisely the trial court calculated "profit" and "loan to shareholder income" and the exact interplay between these two categories of Father's income.

### c. *Mother's Income*

¶ 48 Father argues the trial court also erred in determining Mother's income for 2014. Aside from Father's argument that the trial court also used the wrong years for Mother's income, he argues that Mother's income was erroneously inflated by approximately $3,900 per month between the 2019 and 2021 Orders. It is unclear why Father finds issue with this determination because, as Mother argues, "if it was

error it only raised [Mother's] income." (Emphasis removed.)

¶ 49    In the 2019 Order, the trial court found Mother's monthly income to be $3,833.34, comprised of $3,466.67 in monthly wages and an average monthly bonus of $416.67. In the 2021 Orders, Mother's recurring monthly income in 2014 from employment remained $3,833.34, but the court elected to add "approximately $3,900 per month" in recurring payments from her current husband. The court does not explain or identify where this sum originates. Upon a review of the record, it appears the figure may have been argued by Mother's counsel at the December 2019 hearing. Mother's counsel argued that Mother's current husband actually pays Mother's and the minor children's expenses, and Mother's recurring income of $3,833.34 should be regularly added to "Mother's" household expenses for Mother and the children in order to calculate the total amount of money Mother has access to month-to-month both earned by herself and given to her by her husband—Mother's total income.

¶ 50    The trial court's findings do not make clear, however, how or why it added $3,900 in recurring payments to Mother's monthly income or why these payments were only added to Mother's income in the 2021 Orders. Because we can only speculate as to the source of these payments, the trial court's findings as to Mother's income are unsupported by competent evidence. *See Atwell*, 74 N.C. App. at 234, 328 S.E.2d at 49. On remand, the trial court should make additional findings clarifying Mother's income.

### C. Substantial Change of Circumstances

¶ 51        Father next asserts "the trial court erred when determining that there existed a substantial change in circumstances that warranted modification." (Capitalization altered.)  Father argues the trial court misapplied the standard for determining a substantial change in circumstances because the trial court called this case a "non-Guideline child support case" yet applied a Guidelines-based presumption of a substantial change of circumstances.  Father also argues the trial court erred by failing to set a monetary baseline as to the children's expenses and standard of living in 2011 against which to compare their expenses and standard of living in 2014 and 2016 when the motions to modify were filed.  Mother argues the Guidelines presumption can be analogized to a non-Guidelines case, and a substantial change of circumstances can be found because "[t]he landscape was simply not the same as it had been in 2011" when the Temporary Order was entered.  For the reasons below, we hold there was sufficient evidence of a substantial change of circumstances warranting modification in both 2014 and 2016.  However, we will limit our discussion of the details of the modification since we have already determined we must vacate the orders and remand for additional findings of fact regarding all the relevant facts and circumstances, without limitation to evidence of circumstances in 2014 and 2016.  But we will address some of the arguments to the extent this may be useful on remand.

In the Amended Order, the court made the following findings of fact:

> 16. At the time [Mother] filed her 2014 Motion, almost four years had passed since the entry of the Temporary Order. [Father]'s child support obligation accordingly changed by more than 15% in that he no longer paid the mortgage at the former marital residence ($1370.70/m) for the benefit of [Mother] and the minor children, as part of his support. Further, the minor children had moved from primarily living in the former marital residence with their [Mother] to the residence of [Mother] and [Mother]'s husband . . . .
>
> 17. [Father]'s income was significantly higher than the base salary figures represented by him at the temporary hearing. . . . .[11]

Since we must remand for the trial court to make additional findings regarding the parties' incomes, expenses, and the children's needs, we will not address the parties' arguments regarding the changes in circumstances in detail. That sort of detail would require actual findings regarding the parties' incomes and expenses and the children's needs over the relevant time periods; without knowing the parties' incomes, we cannot say whether the case falls within the Guidelines or not.

At the time of each party's motion, the North Carolina Child Support Guidelines created a presumption of a substantial change in circumstances when

---

[11] Considering that the limited information on Worksheet A attached to the 2011 Temporary Order was not specifically incorporated as a finding of fact, and we have no transcript of the 2011 hearing, we cannot definitively state what Father's income was represented as in 2011.

more than three years has elapsed between entry of an order establishing support and a motion to modify, and there is greater than a 15% disparity between the standing support obligation and the recalculated obligation under the Guidelines.[12] But in the 26 March 2021 Amended Child Support Order the trial court concluded the parties' combined gross incomes for both 2014 and 2016 exceeded the limit set by the Guidelines and therefore "[t]he North Carolina Child Support Guidelines are not applicable in this action . . . ." Regardless, the trial court also found:

> 150. There has been a substantial change in circumstances as of the filing of the [Mother's] Motion to Modify on December 16, 2014 as it had been more than three years since the entry of the last Order and that Order is more than three years old and there is a 15% disparity between the support Ordered and the current support obligation.

> 151. There has been a substantial change in circumstances as of the filing of [Father's] Motion to Modify on October 21, 2016 as the minor child, [G.K.], had turned 18 on October 21, 2016 and graduated for high school.

¶ 55     We first note that both parties filed motions alleging substantial changes in

---

[12] The North Carolina Child Support Guidelines are established pursuant to North Carolina General Statute § 50-13.4 by the Conference of Chief District Judges. The Guidelines are promulgated by the North Carolina Administrative Office of the Courts, and the 2011 Guidelines in effect at the time Mother filed her motion may be found at: https://www.nccourts.gov/assets/documents/publications/guidelines_2011.pdf?VersionId=vT qhbVaIbGVBsfdM8YXPpyiWx3t3qsS7. The 2015 Guidelines in effect at the time Father filed his motion may be found at: https://www.nccourts.gov/assets/documents/publications/guidelines_2015.pdf?VersionId=Ro o8e43y0k2RCzLZZsrUvVBUL6D7Bt74. The presumption was the same at the time both parties filed their motions.

circumstances requiring modification of the child support obligation established in the 2011 Temporary Order. Father's motion to modify, filed in 2016, alleged "there [had] been substantial and material changes in circumstances in that" his eldest daughter had "graduated from high school and turned 18 years of age." Thus, Father is apparently not arguing there has been no change in circumstances justifying modification of child support since 2011; he just argues the trial court should not have used the language of the Child Support Guidelines to find a substantial change in circumstances. As a practical matter, this is a distinction without a difference. There is simply no question that many substantial changes in circumstances relevant to child support occurred in the period of time from 2011 to the close of evidence in December 2019, to name a few obvious ones: the parties resolved their property distribution in 2014; Mother and the children moved out of the marital home in 2014 and Father bought Mother's interest in the residence, thus eliminating Father's obligation under the 2011 Order to pay the mortgage and maintenance expenses for the benefit of Mother and the children; and the older child attained the age of 18 in 2016. The question is not whether the trial court erred in using language based on the Guidelines definition of a presumption of a substantial change in circumstances in a non-Guideline case. The question is whether the trial court should establish child support based upon the Guidelines or if the parties' incomes place them outside the Guidelines, so the trial court must "determine the child support obligation . . .

[by] considering the needs of the child[ren] and the relative ability of each parent to provide support." Since we must remand for the trial court to find all these numbers, we will not address this argument further.

¶ 56         As to Father's motion to modify, there is no doubt that there was a substantial change of circumstances in 2016 when the parties' older child turned 18 years old and had graduated from high school. Father filed the 2016 motion seeking modification due to a substantial change in circumstances, namely that his eldest daughter "graduated from high school and turned 18 years of age on" the day the motion was filed. He cannot complain that the court found a substantial change of circumstances resulting from his oldest daughter reaching age 18 when he was the party who sought modification on that basis. *See, e.g.*, *Frugard v. Pritchard*, 338 N.C. 508, 512, 450 S.E.2d 744, 746 (1994) (citations omitted) ("A party may not complain of action which he induced.").

¶ 57         As discussed above, we have vacated the 2019 Order and remanded for entry of a new order as to the 2014 and 2016 incomes, and we have already discussed the need for findings as to the income, expenses, and needs of the children (assuming the child support calculation is not based upon the Child Support Guidelines) as of the time of calculation of any child support obligation prior to entry of the order and upon entry of the child support order. We need not address Father's remaining arguments regarding the trial court's findings and conclusions of law since we must vacate and

remand for entry of new orders.

**D. Delay in Hearings and Entry of Orders**

¶ 58        Father's final argument in his brief is the delay between the final Amended Child Support Order on 26 March 2021 and the evidentiary hearings in 2018 and 2019 resulted in prejudice to Father and confused the trial court. Mother argues Father "cannot show prejudice from the delay in entering the final order" because he merely alleges a delay, and that Father actually benefited from the delay because "he was allowed to pay only $1,300 in child support for years while the parties' motions to modify worked their way through" the trial court. Since we have already determined we must vacate the Child Support Order, Amended Order, and 2019 Order, we will not address the issue as to delay between the hearing and entry of the order. We also note that much of Father's argument focuses on the effects of the COVID-19 restrictions on operations on his restaurants, but we cannot address that issue as Father's motion to modify on that basis has not yet been decided by the trial court. Even though the final child support orders were entered in 2021, after the pandemic, the last evidentiary hearing ended in December 2019, before the start of the pandemic in March 2020, and we can address only the issues presented and decided based on the evidence addressed by the 2021 Amended Order on appeal.

## IV.    CONCLUSION

¶ 59        We vacate the 2019 Order, the Child Support Order, and the Amended Child

Support Order and remand for entry of new orders. On remand, the trial court may rely on the evidence presented in prior evidentiary hearings for the time periods addressed at those hearings to make new findings of fact as discussed above but must also hold a hearing to receive additional evidence needed to establish child support. The trial court shall enter a new order setting the child support obligation for the entire time period from 2014 until the children both attained age 18 and graduated from high school, addressing all of the necessary factors including each party's income and expenses, the children's needs, and Father's ability to pay, and setting out the manner of payment of the child support. Since the children have now both attained the age of 18, Father will have no current ongoing child support obligation and the trial court's order will establish only past child support, the total amounts owed, how Father is to pay the child support, and any other related issues properly presented by the parties. Considering the complexity of the financial evidence already presented in this case and the need for additional evidence to address the issues of child support over many years, we suggest, but do not mandate, that the trial court may in its discretion consider whether an order of reference under North Carolina General Statute § 1A-1, Rule 53(2) may be appropriate on remand. "The ordering of a reference is within the sound discretion of the court." *Livermon v. Bridgett*, 77 N.C. App. 533, 536, 335 S.E.2d 753, 755 (1985) (citing *Long v. Honeycutt*, 268 N.C. 33, 149 S.E.2d 579 (1966)).

VACATED AND REMANDED.

Judges GORE and JACKSON concur.